[Crim. No. 6616. Fifth Dist. Nov. 23, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT B. WHITSETT, JR., Defendant and Appellant.

COUNSEL

Cynthia S. Calvert, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Gregory W. Baugher, Nancy Sweet and Thomas Shigemoto, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BROWN (G. A.), P. J.**—Appellant, Robert B. Whitsett, Jr., was charged with violation of Penal Code section 245, subdivision (b), assault with a deadly weapon or force likely to produce great bodily injury on a police officer. He was convicted of the lesser included offense of assault with a deadly weapon (Pen. Code, § 245, subd. (a)). The incident occurred on November 18, 1981. He appeals.

Penal Code section 28 was enacted in 1981, effective January 1, 1982 (Stats. 1981, ch. 404, § 4, p. 1592). It provided: "(a) Evidence of mental disease, mental defect, or mental disorder shall not be admitted to negate the capacity to form any mental state, including, but not limited to, purpose, intent, knowledge, or malice aforethought, with which the accused committed the act. Evidence of mental disease, mental defect, or mental disorder is admissible on the issue as to whether the criminal defendant actually formed any such mental state.

"(b) As a matter of public policy there shall be no defense of diminished capacity, diminished responsibility, or irresistible impulse in a criminal action."

In 1982, effective January 1, 1983, Penal Code section 28, insofar as relevant here, was amended to read as follows (underlined portion is amendatory language; asterisks indicate deletions):

"(a) Evidence of mental disease, mental defect, or mental disorder shall not be admitted to negate the capacity to form any mental state, including, but not limited to, purpose, intent, knowledge, premeditation, deliberation, or malice aforethought, with which the accused committed the act. Evidence of mental disease, mental defect, or mental disorder is admissible solely on the issue whether or not the accused actually formed * * * a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged.

"(b) As a matter of public policy there shall be no defense of diminished capacity, diminished responsibility, or irresistible impulse in a criminal action or juvenile adjudication hearing." (Stats. 1982, ch. 893, § 3, p. 4881.)

The central issue is whether in a general intent crime, under the terms of Penal Code section 28 as it existed before the January 1, 1983, amendment, evidence of mental defect, mental disorder or mental disease was admissible to show the defendant did not actually form the general intent required for the crime of assault with a deadly weapon. We will hold that that section did require the court to admit such evidence and, accordingly, we will reverse. There is no question, however, that if the evidence was offered since January 1, 1983, such evidence would not be admissible in general intent crimes.

FACTS

On November 18, 1981, appellant was in the parking lot of the apartment building he lived in, wearing nothing but a jacket and a pair of boots. Appellant was attempting to cut a piece of used carpet with a steak knife in order to install the carpet in his car.

Another tenant of the apartment building, Alfred Laines, while on his way to catch a bus, heard appellant call out to him. When Mr. Laines turned and saw appellant running toward him with a knife in his hand and no pants on, Mr. Laines hastily took flight up the street. Mr. Laines then noticed a station wagon with a shortwave radio antenna on it and flagged it down to request that the occupants of the station wagon call the police. As it turned

out, one of the occupants was a plain clothes policeman in an unmarked police car.

Detective Earl Richardson of the Fresno County Sheriff's Department was driving the station wagon, and seated next to him was a civilian employee of the sheriff's department. Laines advised Richardson that there was a nude Negro male with a knife in the parking lot of his apartment building. Richardson relayed this information to Detective Larry Nomura, who was in another unmarked police car just ahead of Richardson. Richardson advised Nomura that he was going to the apartment complex and asked him for assistance.

The car Richardson was driving was a white station wagon with bars on the back and side windows, a spotlight on the driver's side, a whip antenna, and numerals painted on the roof. Nomura was driving a white Chevrolet Impala with a whip antenna and spotlight. Richardson and Nomura were both dressed in civilian clothing.

Richardson entered the parking lot where appellant was located and parked his car perpendicular to and approximately 15 feet away from the car appellant was working on. Appellant was holding a knife and piece of carpet and was either stabbing the carpet or trying to sharpen his knife against it. Richardson immediately radioed for a uniformed officer. Nomura arrived shortly after Richardson and parked his car next to Richardson's.

Appellant remained 15 to 20 feet in front of Richardson's car and seemed to beckon or challenge him with the knife. After a short time, appellant jumped onto the hood of Richardson's car and began stabbing at the windshield. While appellant was stabbing at the windshield, Detective Richardson tried to identify himself by holding his badge up to the windshield for about 30 seconds. After approximately one to two minutes, appellant got off the hood of Richardson's car and retreated toward where his own car was parked. From that spot, he continued to beckon or challenge Richardson with the knife.

Appellant testified that he jumped on the hood of the car and stabbed at the windshield in an attempt to scare the occupants of the car. These actions, appellant claimed, were motivated by the fact that appellant had been attacked and severely beaten the previous year by three or four people in a white station wagon not far from his apartment building. Appellant testified that he thought that if he could scare the occupants of the car by his aggressive actions they would not attack him again. Although appellant testified that he remembered getting on the car, stabbing the windshield and then

getting off the car, he could not remember anything following that until he was looking into the barrel of a gun immediately before he was shot.

About the time appellant got off the hood of Richardson's car, Officer Olsen arrived in his marked patrol car. He was in full uniform and armed. At this point, all three officers got out of their cars and began to approach appellant. Richardson and Nomura carried their nightsticks.

After the officers took only a few steps, appellant began to run in the opposite direction with the officers in full pursuit. Officer Richardson was leading, followed by Officer Nomura and Officer Olsen. After approximately 80 to 90 feet, with Richardson within 3 or 4 feet of appellant, appellant suddenly stopped, turned, and swung at Richardson with the knife. Richardson swung his nightstick in an effort to deflect the knife, but was not totally successful as the knife struck Richardson's left forearm, causing a wound one to one and one-half inches long. Richardson testified that if he had not deflected the knife it would have struck him in the chest.

Appellant then ran past Richardson in the direction of the officers' cars. Officer Nomura swung at appellant with his nightstick as he ran by but missed. As appellant ran past the officers' cars, Mr. Keith, who had exited the car and was standing near Richardson's station wagon, attempted to trip appellant but was unsuccessful. Appellant then ran between the cars. Officer Olsen yelled at appellant to stop, and, when appellant failed to stop, fired at him three times, hitting him twice.

Appellant apparently has a history of mental illness. At the time of the incidents involved in this case, appellant was on disability for his mental problems. There was a psychiatric evaluation done on appellant but it is not part of the record on appeal.

### DISCUSSION

■ Assault is a general intent crime. (*People* v. *Rocha* (1971) 3 Cal.3d 893, 898-899 [92 Cal.Rptr. 172, 479 P.2d 372].) Clearing up a theretofore existing confusion in the cases, the Supreme Court in *Rocha* resolved the issue:

"Traditionally, simple assault and assault with a deadly weapon have been referred to as 'general intent' crimes. *The mens rea of such offenses is established by showing 'an intent to perform an act of such a nature that the law declares its commission punishable as a criminal offense.'* The act must be committed wilfully but knowledge that it is unlawful or a belief that it is wrong need not be proven. We adhere to those cases that hold that

assault with a deadly weapon is a general intent crime. It remains to define what that intent is.

"An assault is an unlawful attempt, coupled with the present ability, to commit a violent injury on the person of another, or in other words, it is an attempt to commit a battery. [Citations.] Accordingly the intent for an assault with a deadly weapon is the intent to attempt to commit a battery, a battery being 'any willful and unlawful use of force or violence upon the person of another.' (Pen. Code, § 242.) We conclude that the criminal intent which is required for assault with a deadly weapon and set forth in the instructions in the case at bench, is the general intent to wilfully commit an act the direct, natural and probable consequences of which if successfully completed would be the injury to another. Given that intent it is immaterial whether or not the defendant intended to violate the law or knew that his conduct was unlawful. The intent to cause any particular injury [citation], to severely injure another, or to injure in the sense of inflicting bodily harm is not necessary." (*People* v. *Rocha, supra,* 3 Cal.3d 893, 898-899; italics added; fns. omitted.)

Based upon Penal Code section 28 as enacted effective January 1, 1982, appellant requested *in limine* that the court allow the defense to present expert psychiatric testimony regarding appellant's mental state at the time the offense occurred. The motion was denied. ▆ ▆▆▆ A renewed request was also denied.[1]

Penal Code section 28 eliminated the defense of diminished capacity. ▆ In any event, that defense has never been available if the defendant is charged with a general intent crime. (*People* v. *Drew* (1978) 22 Cal.3d 333, 344 [149 Cal.Rptr. 275, 583 P.2d 1318].) However, the second paragraph of section 28, as of the date of the trial herein, still permitted "[e]vidence of mental disease, mental defect, or mental disorder . . . on the issue as to whether the criminal defendant *actually formed* any such mental state." (Italics added.)

▆ Appellant argues that while the Legislature intended to eliminate the diminished capacity defense as to specific intent crimes, it also intended to expand available defenses for general intent crimes by allowing a defendant

---

[1]Defense counsel did not make a formal offer of proof. Respondent argues that the failure to make such an offer prevents appellant from arguing that the court abused its discretion in excluding the evidence. However, the trial court made it clear that evidence of appellant's mental state was not admissible for any reason. "If the trial judge expressly limits the issue or otherwise indicates that he will not receive evidence on a certain subject, an offer of proof relating to the excluded issues would be futile and is excused." (Witkin, Cal. Evidence (1966) § 1313, p. 1213; Evid. Code, § 354, subd. (b).) Accordingly, appellant's failure to make a formal offer of proof does not preclude him from raising the point in this court.

to present evidence that he did not actually form the intent to commit the act which led to the commission of the crime. We agree.

Formal materials available as to the legislative intent in enacting section 28 do not provide any insight as to what the intent of the Legislature was in this regard, so we look to other sources for assistance. First we turn to the language of the statute itself, which did not differentiate between specific and general intent crimes, but by its terms allowed evidence of a defendant's mental state in either case on the issue of whether the defendant actually formed the *mens rea* for assault, that is, " 'an intent to perform an act of such a nature that the law declares its commission punishable as a criminal offense.' " (*People* v. *Rocha, supra,* 3 Cal.3d 893, 899; fn. omitted.)

The amendment to section 28 in 1982 does indeed restrict such evidence to specific intent crimes. However, the amendment to section 28 did not indicate that it was "declaratory of existing law," as the legislative bill did with respect to Penal Code sections 21, 22 and 188, which amended all four of those sections at the same time. The bill stated, "The amendment to Penal Code sections 21, 22 and 188 are declaratory of existing law." (Sen. Bill No. 2035 (1981-1982 Reg. Sess.) § 5.) Section 28 was conspicuously omitted from that declaration. It seems apparent that had the Legislature intended section 28 as originally enacted to apply only to specific intent crimes, that section would have been made subject to the same declaration.

Confirming this interpretation are two law review sources. In tracing the background of section 28, the author of an article in the Pacific Law Journal states: "In 1981, legislation was enacted eliminating the defense of diminished capacity and prohibiting evidence of mental disease or voluntary intoxication to show that the person accused of the crime did not have the ability to form the mental state necessary to commit that crime. The legislation did, however, allow evidence of mental disease or voluntary intoxication to be used to show that the accused did not in fact form the required mental state for either general *or* specific intent crimes." (*Review of Selected 1982 California Legislation* (1983) 14 Pacific L.J. 577, 577-578; fns. omitted.)

In an article in the California Lawyer (June 1982), the authors unequivocally state that evidence of a defendant's mental condition is admissible in general intent crimes.

"Penal Code § 28(a), added by SB 54, therefore provides that evidence of mental disease, mental defect and mental disorder can be admitted 'on the issue as to whether the criminal defendant actually formed' the mental state required for the offense charged. Coupled with Pen C § 28(b), this

means that evidence of mental disability only is admissible when it shows a complete lack of the culpable state of mind.

"Penal Code § 28(a) also abolishes the evidentiary effect of the distinction between general- and specific-intent crimes." (Morse & Cohen, *Diminishing diminished capacity in California* (June 1982) Cal. Lawyer at p. 25.)

We conclude that evidence as to appellant's mental state should have been admitted by the trial court. Since his mental state appears to have been his only plausible defense, the error in excluding such evidence was prejudicial.

﹒ Since this determination disposes of the cause, we need not reach other grounds urged by appellant for admission of the evidence. ■ However, for the guidance of the trial court on retrial, we will comment upon appellant's contention that the trial court erred in refusing to give his requested instruction upon the lesser included offense of simple assault.

There simply was no evidence to support such an instruction. " '[T]he trial court may properly refuse to instruct upon simple assault where the evidence is such as to make it clear that if the defendant is guilty at all, he is guilty of the higher offense [felonious assault].' [Citations.]" (*People* v. *Berry* (1976) 18 Cal.3d 509, 519 [134 Cal.Rptr. 415, 556 P.2d 777].)

Under the facts herein, appellant used a knife and cut Officer Richardson. He was either guilty of a felonious assault or nothing. The offense under the facts could not have been simple assault. Accordingly, there was no error.

The judgment is reversed.

Franson, J., and Zenovich, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 29, 1984. Mosk, J., was of the opinion that the petition should be granted.