[Crim. No. 13811. Third Dist. Dec. 16, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
ALFREDO EDDIE VELEZ, Defendant and Appellant.

---

**COUNSEL**

Patricia A. Bowman, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, James T. McNally and Susan Rankin Bunting, Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**SIMS, J.**—In this case, defendant Alfredo Eddie Velez voluntarily smoked a marijuana cigarette furnished by others at a social gathering. The cigarette

contained phencyclidine (PCP) which caused defendant to become legally unconscious. While thus unconscious, defendant brutally assaulted the victim and was ultimately convicted by a jury of assault with a deadly weapon (Pen. Code, § 245, subd. (a)),[1] with the special finding that his victim was over 60 years old at the time of the crime. (§ 1203.09.)[2] Defendant testified he did not know the cigarette contained PCP.

Sentenced to state prison for the upper term, defendant appeals. In the published portion of this opinion,[3] we conclude, among other things, that defendant was voluntarily intoxicated as a matter of law (§ 22) and was not entitled to jury instructions on the absolute defense of unconsciousness due to involuntary intoxication. Since we reject all of defendant's contentions of error, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 4, 1983, the victim, a 64-year-old man, was sitting in the living room of his home watching television with his wife. Defendant, who was unknown to the victim, suddenly crashed into the house by kicking open a locked wooden door. According to the victim, defendant was angry and looked like an animal.

Defendant attacked the victim with a screwdriver, stabbing him all over his body, including his eyes. Defendant also stomped on him. The victim's wife ran outside and begged her neighbor to call the police.

Stockton Police Officers Smallie and Manley arrived at the victim's house shortly after midnight. Smallie saw defendant trying to stab his bloodied victim as he and his wife struggled in defense. Smallie pointed his gun at defendant and told him to drop his weapon. Defendant apparently ignored Smallie and continued to try to stab the victim. The officers started hitting defendant with their clubs, pulled him away from the victim, and handcuffed

---

[1] All further statutory references are to the Penal Code unless indicated otherwise.

[2] The jury found defendant did not intentionally inflict great bodily injury within the meaning of section 12022.7. The jury also made the following special findings:

"1. Do you find beyond a reasonable doubt the defendant was conscious, as that term is described in the instructions, at the time of the attack? . . . No x

"2. Do you find by a preponderance of the evidence that the defendant consumed a powerful and unpredictable drug involuntarily? . . . No x"

[3] Pursuant to rule 976.1 of the California Rules of Court, all portions of the opinion shall be published except parts III, IV, V, and VI of the Discussion. In those unpublished parts, we reject defendant's contentions that the trial court erroneously ordered defense expert witnesses to disclose writings used by them to refresh their recollections before testifying, that the jury was confused by a tape recording of jury instructions, that the trial court erroneously commented on the evidence, and that defendant was erroneously sentenced to the upper term of imprisonment.

him while he jumped on the victim's legs. Defendant then became limp and the officers dragged him outside. Both officers thought defendant was under the influence of PCP.

A neighbor saw defendant before the stabbing and thought defendant acted as if drunk. Defendant had been walking in the middle of the street in a zigzag fashion without regard for traffic. As the police dragged defendant from the victim's house, the neighbor stated that defendant still acted drunk and insulted the police.

Two defense witnesses familiar with the use and influence of PCP, a psychologist and a psychiatrist, testified defendant's behavior on the night of the assault was consistent with PCP ingestion.

Defendant testified that on the night in question, he was going around with some people who were new acquaintances, i.e., people defendant had seen but did not really know. The group went to the house of the brother-in-law of one of the group. Defendant sat down, had a beer, and began to watch television.

Some of the other members of the group were in the kitchen, smoking marijuana. They called defendant into the kitchen and offered him a marijuana cigarette. Defendant smoked marijuana "maybe three times a month" and knew what it looked like. Defendant took a puff on the cigarette and passed it back. Defendant then took a second puff on the cigarette.

The people in the room began to look like devils. After that, defendant remembered only running and crawling. Nobody mentioned to defendant that the cigarette might contain PCP. Defendant had never before experienced such an effect when he smoked marijuana.

Jose Hernandez was with defendant on the evening of the assault. Hernandez testified he saw defendant smoke a marijuana "joint" that was being passed around. Hernandez knew it was a "K.J." (a cigarette containing PCP) judging from the behavior of others who had also smoked the same marijuana cigarette. Hernandez claimed no one told him or any of the others it was a "K.J."

Others who were with defendant in the house before the assault testified defendant appeared to be under the influence of PCP though none of them had any that night. They testified they smoked marijuana but were unaware of any PCP in the house.

As a result of defendant's attack, the victim is partially blind, his hearing is impaired, his legs are stiff, and he has no feeling in his left palm.

## Discussion

## I

■ Defendant contends the trial court erred in instructing the jury to the effect that unconsciousness caused by voluntary intoxication is not a defense to a charge of assault with a deadly weapon.[4] Defendant asserts that unconsciousness, however caused, is a complete defense even to a general intent crime. We must disagree.

■ Assault with a deadly weapon is a general intent crime. (*People* v. *Rocha* (1971) 3 Cal.3d 893, 898-899 [92 Cal.Rptr. 172].) In ordinary circumstances, in order to commit the crime of assault with a deadly weapon a defendant must have the general intent willfully to commit an act the direct, natural and probable consequences of which, if successfully completed, would be injury to another. (*Id.,* at p. 899.)

■ Section 26 provides in pertinent part: "All persons are capable of committing crimes except those belonging to the following classes:

"Four—Persons who committed the act charged without being conscious thereof."

This statute obviously suggests that one who is unconscious for any reason is incapable of committing a crime.

However, section 22 provides in pertinent part: "(a) No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. Evidence of voluntary intoxication shall not be admitted to negate the capacity to form any mental states for the crimes charged, including, but not limited to, purpose, intent, knowledge, premeditation, deliberation or malice aforethought, with which the accused committed the act.

"(b) Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged."

---

[4]The court instructed the jury that, "As to the basic charge of assault with a deadly weapon . . . unconsciousness is a defense only if the consumption of the drug was involuntary. Voluntary consumption of the drug cannot create a defense to assault with a deadly weapon." Since the evidence was uncontradicted that any unconsciousness was caused by intoxication produced by the ingestion of a drug, the effect of the instruction was to exclude unconsciousness caused by voluntary intoxication as a defense to assault with a deadly weapon.

Section 22 says no act committed by a person who is voluntarily intoxicated is less criminal but the statute does not mention unconsciousness. But what if unconsciousness is precisely the condition caused by voluntary intoxication?[5] Which statute controls, section 22 or section 26?

The answer to this dilemma was provided nearly 20 years ago by Chief Justice Traynor: "Unconsciousness is ordinarily a complete defense to a criminal charge. (Pen. Code, § 26, subd. Five.)[6] If the state of unconsciousness is caused by voluntary intoxication, however, it is not a complete defense. Intoxication can so diminish a person's mental capacity that he is unable to achieve a specific state of mind requisite to a crime, but, even if it is sufficient to destroy volition, it cannot excuse homicide. [Citation.] *Unconsciousness caused by voluntary intoxication is governed by Penal Code section 22, rather than section 26, and it is not a defense when a crime requires only a general intent.* [Citations.] The union or joint operation of act and intent or criminal negligence must exist in every crime . . . (Pen. Code, § 20), and is deemed to exist irrespective of unconsciousness arising from voluntary intoxication. An instruction that does not distinguish unconsciousness caused by voluntary intoxication from that induced by other causes is erroneous." (*People* v. *Conley* (1966) 64 Cal.2d 310, 323-324 [49 Cal.Rptr. 815, 411 P.2d 911], fns. omitted, italics added; see also *People* v. *Ray* (1975) 14 Cal.3d 20, 30, fn. 9 [120 Cal.Rptr. 377, 533 P.2d 1017]; *People* v. *Kelly* (1973) 10 Cal.3d 565, 573 [111 Cal.Rptr. 171, 516 P.2d 875]; *People* v. *Hood* (1969) 1 Cal.3d 444, 457 [82 Cal.Rptr. 618, 462 P.2d 370]; *People* v. *Heffington* (1973) 32 Cal.App.3d 1, 8 [107 Cal.Rptr. 859]; *People* v. *Alexander* (1960) 182 Cal.App.2d 281, 290-291 [6 Cal.Rptr. 153]; *People* v. *Anderson* (1948) 87 Cal.App.2d 857, 860-861 [197 Cal.Rptr. 839].)

Section 22 provides that unconsciousness caused by voluntary intoxication is available only as a partial defense to an offense requiring a specific intent; it is not a defense to a general intent crime such as assault with a deadly weapon. (*People* v. *Kelly, supra,* 10 Cal.3d at pp. 572-573; *People* v. *Corson* (1963) 221 Cal.App.2d 579, 582 [34 Cal.Rptr. 584]; *People* v. *Lim Dum Dong* (1938) 26 Cal.App.2d 135, 138 [78 P.2d 1026].)

■■ Defendant contends *People* v. *Whitsett* (1983) 149 Cal.App.3d 213 [196 Cal.Rptr. 647] compels a different result. We disagree.

---

[5]Subdivision (c) of section 22 provides in relevant part that "Voluntary intoxication includes the voluntary ingestion . . . of any intoxicating . . . drug . . . ." (See *People* v. *Baker* (1954) 42 Cal.2d 550, 572 [268 P.2d 705]; *People* v. *Butler* (1962) 205 Cal.App.2d 437, 439 [23 Cal.Rptr. 118].)

[6]Section 26, subdivision Five, was renumbered as subdivision Four in 1981. (Stats. 1981, ch. 404, § 3, p. 1592.)

Considering a crime committed in 1982, *Whitsett* held that evidence of mental disease, defect, or disorder was admissible to negate general criminal intent under section 28 as enacted in 1981.[7] Here, we need not resolve whether section 22, dealing with intoxication, should control the instant situation to the exclusion of section 28. *Whitsett* pointed out that section 28 was amended in 1982, effective January 1, 1983, to limit admissibility of the described evidence to the issue whether a defendant actually formed a requisite *specific* intent.[8] (See *Whitsett, supra,* at pp. 215-216.) Thus, although *Whitsett* held evidence of mental disease admissible to negate general criminal intent, the court opined, "There is no question, however, that if the evidence was offered since January 1, 1983, such evidence would not be admissible in general intent crimes." (*Id.,* at p. 216.) Here, defendant committed his crime in 1983 after the amendment to section 28. Consequently, even assuming *arguendo* section 28 applies to this case, it does not sanction the admissibility of evidence of mental disease or defect where a general intent crime is charged. Section 28 therefore offers no aid to defendant.

The trial court did not err in giving the subject instructions.

## II

■ Defendant contends the trial court erroneously instructed the jury that defendant had the burden of proving by a preponderance of the evidence that he involuntarily consumed a drug that caused his unconsciousness. He asserts he was lawfully required only to produce sufficient evidence to create a reasonable doubt (a) that he was unconscious and (b) that any condition

[7] Section 28 was enacted in 1981, effective January 1, 1982 (Stats. 1981, ch. 404, § 4, p. 1592). It provided in pertinent part: "(a) Evidence of mental disease, mental defect, or mental disorder shall not be admitted to negate the capacity to form any mental state, including, but not limited to, purpose, intent, knowledge, or malice aforethought, with which the accused committed the act. Evidence of mental disease, mental defect, or mental disorder is admissible on the issue as to whether the criminal defendant actually formed any such mental state.

"(b) As a matter of public policy there shall be no defense of diminished capacity, diminished responsibility, or irresistible impulse in a criminal action."

[8] In 1982, effective January 1, 1983, section 28, insofar as relevant here, was amended to read as follows (underlined portion is amendatory language; asterisks indicate deletions): "(a) Evidence of mental disease, mental defect, or mental disorder shall not be admitted to negate the capacity to form any mental state, including, but not limited to, purpose, intent, knowledge, premeditation, deliberation, or malice aforethought, with which the accused committed the act. Evidence of mental disease, mental defect, or mental disorder is admissible solely on the issue whether or not the accused actually formed * * * a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged.

"(b) As a matter of public policy there shall be no defense of diminished capacity, diminished responsibility, or irresistible impulse in a criminal action or juvenile adjudication hearing." (Stats. 1982, ch. 893, § 3, p. 4881.)

of unconsciousness was due to voluntary (as opposed to involuntary) intoxication. (See *People* v. *Tewksbury* (1976) 15 Cal.3d 953, 962-964 [127 Cal.Rptr. 135, 544 P.2d 1335]; *People* v. *Hardy* (1948) 33 Cal.2d 52, 65-66 [198 P.2d 865].) We need not resolve this contention because we conclude defendant was not entitled to instructions on the defense of unconsciousness due to involuntary intoxication, so that any error in such instructions did not prejudice him.

■■■ Section 22 operates as a limitation on the absolute defense of unconsciousness otherwise provided by section 26. (*People* v. *Conley, supra,* 64 Cal.2d at p. 323.) Section 22 applies only where unconsciousness is caused by voluntary intoxication. (*Ibid.*) Consequently, if unconsciousness is caused by *in*voluntary intoxication, that unconsciousness is a complete defense, and a defendant is wholly excused from criminal responsibility for his conduct. (§ 26, subd. Four; see *People* v. *Scott* (1983) 146 Cal.App.3d 823, 832-833 [194 Cal.Rptr. 633]; Perkins & Boyce, Criminal Law (3d ed. 1982) pp. 1001-1005; Annot., When Intoxication Deemed Involuntary so as to Constitute a Defense to Criminal Charge (1976) 73 A.L.R.3d 195.)

■■■ Defendant's contention that he was entitled to instructions wholly excusing him from criminal responsibility in this case is premised on his previously recounted testimony that he was offered and smoked a marijuana cigarette which, unbeknownst to him, contained PCP. However, if this conduct falls within the definition of voluntary intoxication under section 22 as a matter of law, then defendant was not entitled to instructions on unconsciousness caused by involuntary intoxication. We therefore examine whether defendant's intoxication was voluntary as a matter of law.

We begin by noting that the drug defendant admitted he knowingly consumed—marijuana—is a controlled substance classified as a hallucinogen in California. (Health & Saf. Code, § 11054, subd. (d)(13).) Except possibly in circumstances not here relevant, it is unlawful in this state to possess, transport, sell, furnish, administer or give away marijuana. (Health & Saf. Code, §§ 11357, 11360.)[9] Consequently, when defendant possessed the marijuana he consumed, and when he gave or furnished it to others, he broke the law.

A plausible argument could be made that, as a matter of policy, defendant should not be wholly excused from criminal responsibility for harm caused others, and arising out of his consumption of an unlawful drug, on the ground that allowance of such an excuse would sanction consumption of unlawful drugs. Moreover, the allowance of an absolute defense in the cir-

---

[9]When we refer to marijuana as an "unlawful drug," we refer to these prohibitions.

cumstances presented here would result in an anomalous allocation of criminal responsibility. Thus, had defendant legally purchased alcohol and had he become voluntarily but lawfully drunk in a private place, and had he committed the subject offenses in the same private place, he would be held fully responsible under section 22 for assault with a deadly weapon even though he had committed no crime at all in becoming intoxicated. Given the legal prohibitions placed on marijuana (see fn. 9, *ante*) it is hard to rationalize why the law should treat those who knowingly smoke marijuana more leniently than those who knowingly get drunk.

However, the instant case need not be decided on such broad policy grounds.

Section 22 codified the common law rule that voluntary intoxication does not excuse the commission of a crime. (*People* v. *Haskins* (1960) 177 Cal.App.2d 84, 88 [2 Cal.Rptr. 34].) It is therefore appropriate to construe the statute in "the spirit of the common law" (*People* v. *Gauze* (1975) 15 Cal.3d 709, 712 [125 Cal.Rptr. 773, 542 P.2d 1365]), and, indeed, our Supreme Court has done just that. (See, e.g., *People* v. *Blake* (1884) 65 Cal. 275, 277-278 [4 P. 1].)

■ The preclusion of voluntary intoxication as an absolute defense at common law has been justified on the theory that " 'when a crime is committed by a party while in a fit of intoxication, the law will not allow him to avail himself of the excuse of his own gross vice and misconduct to shelter himself from the legal consequences of such crime.' " (*People* v. *Lewis* (1869) 36 Cal. 531, 531-532; see *People* v. *Webb* (1938) 25 Cal.App.2d 130, 132 [77 P.2d 231].) Also, "It is a duty which every one owes to his fellow-men, and to society . . . to preserve, so far as lies in his power, the inestimable gift of reason. If it is perverted or destroyed by fixed disease, though brought on by his own vices, the law holds him not accountable. But if, by a voluntary act, he temporarily casts off the restraints of reason and conscience, no wrong is done him if he is considered answerable for any injury which, in that state, he may do to others or to society." (*People* v. *Blake, supra,* 65 Cal. at p. 277, quoting *People* v. *Rogers* (1858) 18 N.Y. 9, citations omitted; see *People* v. *Lim Dum Dong, supra,* 26 Cal.App.2d at pp. 138-139.)

Clearly, then, one who becomes voluntarily intoxicated to the point of unconsciousness can have no actual intent to commit a crime; rather, criminal responsibility is justified on the theory that having chosen to breach one's duty to others of acting with reason and conscience, one may not entirely avoid criminal harm caused by one's breach of duty. It is therefore apparent the imposition of criminal responsibility for acts committed while

voluntarily intoxicated is predicated on a theory of criminal negligence. (See, e.g., § 20; Model Penal Code (1985) com. to § 2.08, p. 354.) In California, whether one is criminally negligent is ascertained by applying an objective test: whether *a reasonable person* in defendant's circumstances has engaged in criminally negligent behavior. (See *People* v. *Watson* (1981) 30 Cal.3d 290, 296 [179 Cal.Rptr. 43, 637 P.2d 279].) We shall apply such a test here to ascertain whether defendant was voluntarily intoxicated as a matter of law.

▮ Boiled down to its essentials, defendant's defense was that he smoked marijuana given to him at a social gathering by others, but he did not in fact know it contained PCP, which produced an unexpected intoxicating effect. This defense depends on the validity of defendant's assumptions that the cigarette did not contain PCP and would produce a predictable intoxicating effect. However, for reasons previously discussed, these assumptions are tested not by defendant's subjective belief but rather by the standard of a reasonable person. In this regard, it is common knowledge that unlawful street drugs do not come with warranties of purity or quality associated with lawfully acquired drugs such as alcohol. Thus, unlike alcohol, unlawful street drugs are frequently not the substance they purport to be or are contaminated with other substances not apparent to the naked eye. (See, e.g., Brecher, Licit and Illicit Drugs (1972) 376, 525.) In particular, marijuana is frequently contaminated with PCP or other psychoactive drugs. (Coles, Brenner, Meagher, Drugs and Youth (1970) 27-28.) Indeed, the reported decisions of the California appellate courts provide a ready compilation of cases involving "lacing" or "dusting" of marijuana with PCP. (See, e.g., *People* v. *Fields* (1983) 35 Cal.3d 329 [197 Cal.Rptr. 803, 673 P.2d 680]; *People* v. *Barrick* (1982) 33 Cal.3d 115 [187 Cal.Rptr. 716, 654 P.2d 1243]; *People* v. *Presley* (1985) 172 Cal.App.3d 1001 [220 Cal.Rptr. 1]; *People* v. *Minichilli* (1984) 161 Cal.App.3d 660 [207 Cal.Rptr. 766]; *People* v. *Boyes* (1983) 149 Cal.App.3d 812 [197 Cal.Rptr. 105]; *People* v. *McClellan* (1980) 107 Cal.App.3d 297 [165 Cal.Rptr. 603]; *People* v. *Phillips* (1979) 90 Cal.App.3d 356 [153 Cal.Rptr. 359]; *People* v. *Poole* (1975) 48 Cal.App.3d 881 [122 Cal.Rptr. 87].)

The instant case simply reflects this well-established knowledge. Marijuana cigarettes laced with PCP were sufficiently common among defendant's acquaintances that they were given a nickname: "K.J.'s" Indeed, one of defendant's own experts, psychologist Dr. Steven Edwin Lerner, testified that PCP was commonly concealed in hand-rolled cigarettes containing various leaf materials including marijuana, and that the most common method of PCP intoxication involved smoking "joints."

Putting aside the question whether a defendant may be precluded in all circumstances from invoking the absolute defense of involuntary intoxica-

tion where he has consumed an unlawful drug, we hold a reasonable person has no right to assume that a marijuana cigarette furnished to him by others at a social gathering will not contain PCP; nor may such a person assume such a marijuana cigarette will produce any predictable intoxicating effect. Absent these assumptions, defendant cannot contend he was involuntarily intoxicated, because he had no right to expect the substance he consumed was other than it was nor that it would produce an intoxicating effect different from the one it did. We therefore conclude defendant was voluntarily intoxicated as a matter of law within the meaning of section 22.

We do not read *People* v. *Barrick, supra,* 33 Cal.3d at page 132 as requiring a contrary conclusion. There, our Supreme Court ruled no substantial evidence justified an instruction on unconsciousness where the defendant claimed he had unknowingly consumed PCP mixed with marijuana. The court simply did not address the question whether a defendant in the present circumstances would be voluntarily intoxicated as a matter of law.

The result we reach is consistent with the law of other American jurisdictions. Thus, involuntary intoxication is sometimes referred to as "innocent" intoxication. (Perkins & Boyce, *op. cit. supra,* at p. 1001.) The defense is allowed where the defendant has been without fault. "Involuntary intoxication, it appears, was first recognized as that caused by the unskillfulness of a physician or by the contrivance of one's enemies. Today, where the intoxication is induced through the fault of another *and without any fault on the part of the accused,* it is generally treated as involuntary. Intoxication caused by the force, duress, fraud, or contrivance of another, for whatever purpose, without any fault on the part of the accused, is uniformly recognized as involuntary intoxication." (Annot., *op. cit. supra,* 73 A.L.R.3d at pp. 199-200, fns. omitted, italics added; see also Annot., Effect of Voluntary Drug Intoxication Upon Criminal Responsibility (1976) 73 A.L.R.3d 98.)

In accordance with this view, courts have allowed the defense of involuntary intoxication based on the ingestion of an unlawful drug where the defendant reasonably believed he was consuming a lawful substance or where the unlawful drug was' placed without defendant's knowledge *in a lawful substance.* (See *People* v. *Scott, supra,* 146 Cal.App.3d at pp. 826-827 [PCP surreptitiously placed in punch at family reunion-type party]; *People* v. *Carlo* (1974) 46 App.Div.2d 764 [361 N.Y.S.2d 168] [defendant took hallucinogenic pill in reasonable belief it was aspirin or lawful tranquilizer]; *Commonwealth* v. *McAlister* (1974) 365 Mass. 454 [313 N.E.2d 113], cert. den. 419 U.S. 1115 [42 L.Ed.2d 814, 95 S.Ct. 794] [coffee spiked with drug that produced reaction consistent with LSD]; *People* v. *White* (1970) 131 Ill.App.2d 652 [264 N.E.2d 228] [drug put in defendant's

beer without his knowledge]; *People* v. *Penman* (1915) 271 Ill. 894 [110 N.E. 894] [intoxicating pills reasonably believed to be breath perfume].)[10]

Conversely, in *State* v. *Hall* (Iowa 1974) 214 N.W.2d 205 [73 A.L.R.3d 85], defendant voluntarily took a pill that casual acquaintances had given him, telling him it was a "little sunshine" and would make him feel "groovy." (73 A.L.R.3d at p. 87.) After taking the pill, defendant began to experience strange perceptions and shot his companion because he thought he was a scary dog. (*Ibid.*) Holding instructions on involuntary intoxication were properly refused because defendant knew the pill was a mind-affecting drug, the Iowa Supreme Court impliedly rejected defendant's theory that his intoxication was involuntary because the intoxicating effect of the pill was different from what he expected. (*Id.*, at p. 89.)

Returning to the contention at issue—the asserted error of the trial court in instructing on the defense of unconsciousness—such instructions are required only where there is evidence sufficient to deserve consideration by the jury. (*People* v. *Barrick, supra,* 33 Cal.3d at p. 132.) Since we have concluded defendant's own evidence showed he was voluntarily intoxicated as a matter of law, he was not entitled to instructions on the absolute defense of unconsciousness.[11] (§ 22, subds. (a), (b); *People* v. *Kelly, supra,* 10 Cal.3d at p. 574.) And, since the defense instructions at issue were erroneously given in the first place, any error in those instructions did not prejudice defendant and was necessarily harmless. (*People* v. *Spencer* (1963) 60 Cal.2d 64, 86-88 [31 Cal.Rptr. 782, 383 P.2d 134]; see *People* v. *Jordan* (1937) 24 Cal.App.2d 39, 55 [74 P.2d 519].)[12]

---

[10]*People* v. *Murray* (1967) 247 Cal.App.2d 730 [56 Cal.Rptr. 21] suggests in dictum that a defendant charged with escape from state prison could defend on the ground of insanity because he had taken liquor and "goofballs" and was unfamiliar with their intoxicating effect. (P. 732.) Of course, the instant case raises no issues of insanity. Moreover, to the extent *Murray* suggests the availability of an insanity defense based on temporary intoxication, without a showing the insanity is "settled," the case has been overruled sub silentio by *People* v. *Kelly, supra,* 10 Cal.3d at page 576.

[11]We caution that we deal here only with the assertion of unconsciousness due to voluntary intoxication as an absolute defense to a general intent crime. Had the victim in this case died, and had defendant been charged with murder, defendant would have been entitled to instructions based on his voluntary intoxication as a partial defense precluding specific intent, such as premeditation, deliberation, or malice. (§ 22, subd. (b).) Indeed, defendant was entitled to such instructions as a defense to the section 12022.7 enhancement allegation for great bodily injury, because the enhancement requires specific intent. (See *People* v. *Ramos* (1982) 30 Cal.3d 553, 583 [180 Cal.Rptr. 266, 639 P.2d 908].) Since in this case the enhancement was found not true (see fn. 2, *ante*), we need not dwell further on the matter.

[12]This resolution makes it unnecessary to consider various other contentions of defendant that the court erred in its series of instructions on unconsciousness. Similarly, defendant's argument that a retrial is precluded by principles of double jeopardy is moot.

### III*

. . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed.

Regan, Acting P. J., and Evans, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 27, 1986.

---

*See footnote 3, *ante*, page 788.