UNITED STATES of America, Appellee,

v.

**F.D.L. (Juvenile Male), Appellant.**

UNITED STATES of America, Appellee,

v.

**R.L.R. (Juvenile Male), Appellant.**

Nos. 86–5316, 86–5317.

United States Court of Appeals, Eighth Circuit.

Submitted June 11, 1987.

Decided Jan. 7, 1988.

William L. Tilton, St. Paul, Minn., for appellant RLR.

Scott F. Tilsen, Minneapolis, Minn., for appellant FDL.

Donald M. Lewis, Minneapolis, Minn., for appellee.

Before McMILLIAN, Circuit Judge, FAIRCHILD,[*] Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

F.D.L. and R.L.R.[1] appeal from an adjudication of delinquency pursuant to 18 U.S.C. §§ 5031 and 5032 (1982) following the district court's determination that defendants were guilty of committing involuntary manslaughter on an Indian reservation in violation of 18 U.S.C. §§ 2, 1112(b) and 1153.[2] On appeal, both F.D.L. and R.L.R. allege that the district court erred in rejecting their defense claim of temporary insanity by reason of involuntary intoxication. We affirm the judgment of the district court.

The case was tried to the court, and pursuant to Fed.R.Crim.P. 23(c), special findings were made.

On Monday, January 27, 1986, the frozen body of Loren Lyons was discovered in the back seat of his car, which was stuck in the snow off a road in Redlake, Minnesota. Lyons had died of hypothermia.

On the previous Friday night, F.D.L., R.L.R. and Connie Lussier, R.L.R.'s fifteen-year-old half-sister, after drinking several beers, went to Robert Nadeau's gas station in the "back of town" area of Redlake. There they met Lyons, who had also been drinking, and asked him for a ride. Lyons agreed and the group went to the home of R.L.R.'s grandmother, where R.L.R. picked up a television set which they planned to pawn to get money for marijuana. Over the next hour and a half, Lyons unsuccessfully attempted to "hock" the television set. However, R.L.R. did pawn his winter jacket for $20.00.

Abandoning the attempt to sell the television, Lyons pulled his car to the side of the road and rolled two marijuana cigarettes. Connie Lussier saw Lyons sprinkle a white powder on the marijuana. R.L.R., who was riding in the seat next to Lyons, did not see the white powder. There was testimony that the white powder Connie Lussier saw sprinkled on the marijuana was probably phencyclidine (commonly known as PCP or angel dust). Testimony established that PCP is commonly added to marijuana cigarettes and at the time of this incident was a problem on the Red Lake Reservation. Finally, the defendants and Connie Lussier testified they felt unusually "high" after smoking the marijuana.

The group drove around Red Lake for another twenty minutes or so, when Lyons stopped the car so the defendants could urinate. While the defendants were outside they heard a car door slam. Fearing that Lyons was going to drive off with Connie, leaving the two defendants stranded several miles from home, F.D.L. opened the driver's door of the car and began pulling Lyons out of the car. A fight followed. R.L.R. joined in when he thought he saw Lyons reach for a screwdriver to use as a weapon against F.D.L. Connie Lussier testified the beating lasted fifteen minutes. After the fight, Lyons was unconscious. F.D.L. and R.L.R. lifted Lyons into the car and put him in the back seat. They could hear him breathing and snoring, and didn't think they had hurt him badly. While the beating was not the actu-

---

[*] The HONORABLE THOMAS E. FAIRCHILD, Senior Circuit Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation.

[1] Because the appellants are juveniles, references throughout this opinion will be to their initials only.

[2] The Honorable Edward J. Devitt, Senior United States District Judge for the District of Minnesota.

al cause of Lyons death, the district court found that the assault on Lyons was a proximate cause of his death.

F.D.L. and R.L.R. continued to drive, with Lyons in the back seat of the car. After dropping off Connie at the home of Sheldon Bailey, R.L.R. lost control of the car as he fumbled for a cigarette. The road was icy, and the car slid into a ditch and became embedded in a snow bank.

Leaving the motor and heater running, and a door ajar to prevent carbon monoxide poisoning, the defendants abandoned the car and walked about one-half mile to the home of Sheldon Bailey. R.L.R. walked that distance without his winter coat and testified that he didn't remember feeling cold.[3] From there, Sheldon Bailey drove R.L.R., F.D.L. and Connie to the home of Charles Bolio. R.L.R. left Bolio's house and walked one mile back to his grandmother's home, again without his winter jacket.

Over the weekend several people, including F.D.L., walked past Lyons' car in the ditch. No one observed until Monday that Lyons was in it. Temperatures in the area sank from eight degrees above zero on Friday night to twenty-six degrees below on Sunday night and Lyons froze to death.

■ On appeal, F.D.L. and R.L.R., relying on 18 U.S.C. § 17,[4] argue that the trial court improperly rejected their claims of temporary insanity due to involuntary intoxication. R.L.R. filed a notice of intent to rely on such a defense as required by Fed.R.Crim.P. 12.2.[5] R.L.R.'s counsel, in his opening statement, informed the court that involuntary intoxication was an issue in the case, discussing it in some detail, and immediately afterwards F.D.L.'s counsel informed the court that his position was the

same. F.D.L.'s counsel could have been far more specific in raising this defense, but we believe that the district court was properly apprised of it, particularly in view of the specificity with which R.L.R. had placed the defense in issue, and we will consider the issue for both defendants on appeal.

The Fifth Circuit has stated: "The concept of criminal responsibility in the federal courts is a congeries of judicially made rules of decision based on common law concepts." *United States v. Lyons*, 731 F.2d 243, 247 (5th Cir.) (en banc), *cert. denied*, 469 U.S. 930, 105 S.Ct. 323, 83 L.Ed.2d 260 (1984). The practice of relieving a defendant of criminal responsibility, because of involuntary intoxication, extends back to the earliest days of common law. *See* Annotation, *When Intoxication Deemed Involuntary so as to Constitute a Defense to Criminal Charge*, 73 A.L.R.3d 195 § 2 (1976).

■ The courts dealing with this issue, nearly all of them state courts, have defined involuntary intoxication in essentially the same terms as insanity. Like insanity, involuntary intoxication diminishes the culpability of a crime. The defendant is excused from criminality because intoxication affects the ability to distinguish between right and wrong. *Gilcrist v. Kincheloe*, 589 F.Supp. 291 (E.D.Wash.1984) *aff'd* 774 F.2d 1173 (9th Cir.1985). *See also* W. Lafave & A. Scott, *Handbook on Crim. Law*, § 45 at 342 (1972). Thus, the mental state of an involuntarily intoxicated defendant is measured by the test of legal insanity. *Gilcrist, supra* at 294, *State v. Lucas*, 368 N.W.2d 124 (Iowa 1985); *Minnesota v. Altimus*, 306 Minn. 462, 238 N.W.2d 851 (1976) (en banc); *State v. Mriglot*, 15

---

**3.** Dr. Carroll, an expert on the effects of PCP, testified that PCP is an anesthetic, the fact that R.L.R. had no coat, yet he did not remember feeling cold is consistent with ingestion of PCP.

**4.** The Insanity defense is codified in 18 U.S.C. § 17, which provides:
[I]t is an affirmative defense to a prosecution under any federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of severe mental disease or defect was unable to appre-

ciate the nature and quality or the wrongfulness of his acts.

**5.** If we grant appellants' contention that intoxication falls within the Insanity defense, the Fed.R.Crim.P. 12.2 notice would be required. In any event, the defense must be raised at trial before we may consider it on appeal. *United States v. Librach*, 536 F.2d 1228, 1231 (8th Cir.), *cert. denied*, 429 U.S. 939, 97 S.Ct. 354, 50 L.Ed. 2d 308 (1976).

Wash.App. 446, 550 P.2d 17 (1976), *aff'd* 88 Wash.2d 573, 564 P.2d 784 (1977) (en banc). The Ninth Circuit has recognized involuntary intoxication as a basis for invoking the insanity defense and it has expressed the rule in the same terms. *United States v. Henderson,* 680 F.2d 659 (9th Cir.1982). *But see Lyons,* 731 F.2d at 245 (mere drug addiction, voluntary or involuntary, raises no issue of such a mental disease or defect as can serve as a basis for the insanity defense). These cases all require a finding that there has been involuntary ingestion of an intoxicant, usually through trickery, and that the defendant was unable to appreciate the nature and quality or wrongfulness of his acts. 73 A.L.R.3d 203–04 (1976) (cases cited therein).

There are facts in this record to support a finding that R.L.R. and F.D.L. were involuntarily intoxicated because, unknown to them, PCP had been added to their marijuana cigarettes. There was testimony that PCP is commonly added to marijuana cigarettes; that PCP was a problem on the reservation; and that PCP was added to the cigarettes smoked by the defendants. Additionally, testimony established that R.L.R. walked a considerable distance without his coat in extremely cold weather, conduct that is at least consistent with the anesthetic effects of PCP. It is also true that the court could have rejected the testimony that the intoxication was involuntary. The evidence offered to establish that PCP was in the marijuana cigarettes was not indisputable. The district court made no specific finding on this issue.

The findings of the district court, however, are sufficient to dispose of the involuntary intoxication defense, as they reject its second element, namely, that the defendants were unable to appreciate the nature and quality or wrongfulness of their acts. The district court found that at the time of the acts resulting in Lyons' death,

the defendants were capable of knowing and did know, that their conduct was a threat to his life and they were able to foresee the consequences of their acts. These findings establish that R.L.R. and F.D.L. were able to appreciate the nature and quality or wrongfulness of their acts. Thus, the converse of the second element of the involuntary intoxication defense is established.

These are factual findings that will not be reversed unless clearly erroneous. *United States v. Jones,* 759 F.2d 633, 637 n. 3 (8th Cir.), *cert. denied,* 474 U.S. 837, 106 S.Ct. 113, 88 L.Ed.2d 92 (1985), (citing *Anderson v. Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). The appellants do not attack the district court findings on this issue, and our review of the record convinces us that the findings are not clearly erroneous. Accordingly, we reject the argument of F.D.L. and R.L.R. that the district court erred in refusing to accept the defense of involuntary intoxication.

 Additionally, even if the district court believed that PCP was added to the marijuana, it may have determined the intoxication was not involuntary, but voluntary. R.L.R. and F.D.L. had voluntarily consumed beer and smoked marijuana cigarettes. Any intoxication resulting from this activity would be no defense. Congress in recently revising the Insanity defense statute specifically rejected voluntary intoxication as a defense even if it renders the defendant unable to appreciate the nature and quality of his acts.[6]

In a factually similar case, *People v. Velez,* 175 Cal.App.3d 785, 221 Cal.Rptr. 631 (1985), the defendant raised the defense of involuntary intoxication after smoking a marijuana cigarette unaware it contained PCP. The Court in holding the

---

**6.** *See* S.Rep. No. 225, 98th Cong., 1st Sess. 229 (1983). *See also United States v. Costello,* 760 F.2d 1123, 1127–28 (11th Cir.1985); *United States v. Romano,* 482 F.2d 1183, 1196 (5th Cir.1973), *cert. denied, sub nom, Yassen v. United States,* 414 U.S. 1129, 94 S.Ct. 866, 38 L.Ed.2d 753 (1974). Involuntary manslaughter, as defined in 18 U.S.C. § 1112, is a general intent

crime. Voluntary intoxication is no defense to such a crime. *United States v. Hanson,* 618 F.2d 1261, 1265 (8th Cir.), *cert. denied,* 449 U.S. 854, 101 S.Ct. 148, 66 L.Ed.2d 67 (1980); *United States v. Jewett,* 438 F.2d 495, 499 (8th Cir.), *cert. denied,* 402 U.S. 947, 91 S.Ct. 1640, 29 L.Ed.2d 117 (1971).

defendant *voluntarily* intoxicated as a matter of law noted,

> [A] reasonable person has no right to assume that a marijuana cigarette furnished to him at a social gathering will not contain PCP; nor may such a person assume such a marijuana cigarette will produce any predictable intoxicating effect. Absent these assumptions, defendant cannot contend he was involuntarily intoxicated, because he has no right to expect the substance he consumed was other than what it was nor that it would produce an intoxicating effect different from the one it did.

*Id.* 221 Cal.Rptr. at 638. *See also Palmer v. State,* 719 P.2d 1285 (Okla.Crim.App. 1986); *State v. Hall,* 214 N.W.2d 205 (Iowa 1974). *But cf. People v. Scott,* 146 Cal. App.3d 823, 194 Cal.Rptr. 633 (1983) (accused's intoxication is considered involuntary if caused by drink that has been drugged without his knowledge).[7]

■ Additionally, both defendants argue that there was insufficient evidence to establish manslaughter under 18 U.S.C. § 1112. This circuit has established that conviction of involuntary manslaughter requires proof that a defendant

> acted grossly negligent in that he acted with a wanton or reckless disregard for human life, knowing that his conduct was a threat to the lives of others or having knowledge of such circumstances as could enable him to foresee the peril to which his act might subject others.

*United States v. Opsta,* 659 F.2d 848, 849 (8th Cir.1981). Section 1112 also requires that such conduct occur "in the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner * * * of a lawful act which might produce death."

In particular, R.L.R. argues that there was insufficient evidence to prove that he committed an unlawful act as required under 18 U.S.C. § 1112. He claims that his actions were not unlawful because they were taken in defense after being threat-

ened by Lyons, with a screw driver. Further, both defendants argue that the assault itself was not in its nature dangerous to life or an act constituting gross negligence. Finally, they contend that there was no evidence to show the defendants acted with wanton or reckless disregard for Lyons' life. Indeed, they urge the evidence was directly contrary: they put the unconscious Lyons into the car; they left on the car heater and engine; and they cracked open a door to prevent carbon monoxide poisoning.

■ In considering this issue, we must take the evidence in the view most favorable to the government to determine if it supports the fact determinations of the trial judge. *United States v. Long Elk,* 805 F.2d 826, 829 (8th Cir.1986); *United States v. Cady,* 567 F.2d 771, 774 (8th Cir.1977), *cert. denied,* 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978). Here, the chain of events began with voluntary consumption of alcohol and marijuana by both R.L.R. and F.D.L., as well as Lyons, and an assault lasting some period of time, which left Lyons unconscious. The defendants dropped off Connie Lussier and the television set, sought no help for Lyons, and later were involved in a vehicular accident, going off the road. They left Lyons in an old model vehicle in subfreezing weather, walked to the house of a friend and made no mention of Lyons' whereabouts. The district court found that by assaulting Lyons, leaving him alone and intoxicated in an abandoned automobile in subfreezing temperatures at night, R.L.R. and F.D.R. acted with gross negligence and reckless disregard for Lyons' life. It further found that they were capable of knowing and did know that their conduct was a threat to Lyons' life and they were able to foresee the consequences of their acts. These findings are fully supported by the record at the trial. We therefore conclude that there was sufficient evidence in this case to support the convictions.

As a final issue, F.D.L. argues that the district court erred in failing to suppress

---

**7.** The court in *Velez,* 221 Cal.Rptr. at 638, distinguishes *Scott, supra,* noting that courts have allowed the defense of involuntary intoxication based on the ingestion of an unlawful drug where the defendant reasonably believed he was consuming a lawful substance or where the unlawful drug was placed without defendant's knowledge in a *lawful* substance.

the confession that he made to the F.B.I. F.D.L. was interviewed in the presence of his mother, who asked if the assistant federal public defender would represent her son at trial. The mother testified that both she and her son were confused and scared; she testified she wanted a lawyer present but was afraid if they waited her son would be put in jail until the lawyer got there. F.D.L. argues that once he and his mother inquired about the availability of counsel, questioning should have ceased. He urges any subsequent confession was not a knowing and intelligent waiver of his fifth amendment rights and, accordingly, his statements should be suppressed. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

■ The district court found that F.D. L.'s confession was voluntarily made. In making that determination, the district court is required to consider the totality of the circumstances, even where interrogation of juveniles is involved. *Fare v. Michael C.,* 442 U.S. 707, 725, 99 S.Ct. 2560, 2571, 61 L.Ed.2d 197 (1979). The district court found, and the record demonstrates, that the F.B.I. agent paid particular attention to the explaining of F.D.L.'s rights to him and his mother, and that this advice took some thirty minutes. The record also reflects that the discussion concerning the public defender related to representation at the time of trial, and that after this discussion, F.D.L. and his mother consulted with each other, and then F.D.L. decided to talk to the agent. He was again advised of his rights and explained the waiver form. During this period of time and the later interview, neither F.D.L. nor his mother asked to speak to a lawyer. We conclude that the totality of the circumstances indicates F.D.L. made a valid waiver of his rights. *United States v. White Bear,* 668 F.2d 409, 412 (8th Cir.1982). *See also Connecticut v. Barrett,* — U.S. ——, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987). The district court did not err in finding the confession voluntary.

We affirm the judgment of conviction.