_____

No. 95-2691
_____

United States of America,        *
                                 *
         Plaintiff - Appellee,   *   Appeal from the United States
                                 *   District Court for the
    v.                           *   District of Minnesota.
                                 *
Juvenile Male C.L.O.,            *
                                 *
         Defendant - Appellant.  *


_____

         Submitted:  December 11, 1995

           Filed:  February 28, 1996
_____

Before HANSEN, JOHN R. GIBSON, and MURPHY, Circuit Judges.
_____


HANSEN, Circuit Judge.

    C.L.O., a juvenile who resided on the Red Lake Indian Reservation, appeals an adjudication of delinquency pursuant to the Juvenile Delinquency Act, 18 U.S.C. §§ 5031-42, following the district court's[1] determination that C.L.O. was guilty of committing voluntary manslaughter in violation of 18 U.S.C. § 1112. On appeal, C.L.O. contends the evidence was insufficient to support the adjudication. He also urges us to hold that the Juvenile Delinquency Act is unconstitutional because it does not provide juveniles with a jury trial. We affirm but remand for entry of a corrected dispositional order.

_____

    [1]The Honorable Dale E. Saffels, United States District Judge for the District of Kansas, sitting by designation.

## I.

Viewed in the light most favorable to the government, see United States v. F.D.L., 836 F.2d 1113, 1118 (8th Cir. 1988), the evidence establishes the following facts. C.L.O., then age 15, stabbed another juvenile, P.C., in the neck, severing an artery and causing P.C.'s death. The incident occurred at about 3:00 a.m. at a third party's house, where the juveniles were drinking alcohol in the basement. C.L.O. had in his possession a knife, which he had obtained after an earlier scuffle with P.C. C.L.O. and P.C. were sitting together when P.C. said something that angered C.L.O. C.L.O. cut P.C. in the leg, penetrating through the skin into the muscle tissue. In response, P.C. retrieved a baseball bat from the upstairs and hit C.L.O. twice on the head with it. C.L.O. began to swing the knife, cutting or stabbing P.C. in the hands, thigh, shoulder, chest, and back, and eventually landing the blade at the base of P.C.'s neck. P.C. proceeded upstairs and died in the hallway at the top of the stairs.

C.L.O. was charged with voluntary manslaughter as a juvenile, and the case proceeded to an adjudicatory hearing before a United States district judge. The district judge found C.L.O. guilty, returned an adjudication of delinquency, and sentenced C.L.O. to probation until the age of 21, one condition of which was placement in the custody of the Attorney General for a term of 42 months. C.L.O. appeals.

## II.

C.L.O. first argues that the government did not produce sufficient evidence to prove beyond a reasonable doubt that he did not act in self-defense. C.L.O.'s claim of self-defense rests on an assumption that the incident resulting in P.C.'s death began when P.C. returned to the basement with the baseball bat and used it to hit C.L.O. on the head. Given that assumption, C.L.O. argues

2

reasonable doubt exists as to whether C.L.O. acted out of self-defense.

When reviewing for sufficiency of evidence, we reverse a district court's adjudication of delinquency based on the district court's finding that the juvenile is guilty of a criminal offense only when no reasonable fact-finder could have found guilt beyond a reasonable doubt. United States v. W.T.T., 800 F.2d 780, 781-82 (8th Cir. 1986). We view the evidence in the light most favorable to the government, giving the government the benefit of all reasonable inferences. Id.; F.D.L., 836 F.2d at 1118.

We conclude that the district court properly rejected C.L.O.'s self-defense theory. Viewing the evidence in the light most favorable to the government, we believe a reasonable fact-finder could determine that the incident leading to P.C.'s death began when C.L.O. cut P.C.'s leg. Because C.L.O. was the aggressor and set in motion a series of events culminating in P.C.'s death, he has no right to a consideration of self-defense. Rowe v. United States, 164 U.S. 546, 556 (1896); see United States v. Goodface, 835 F.2d 1233, 1235-36 (8th Cir. 1987); Devitt, Blackmar, & O'Malley, 2 Federal Jury Practice and Instructions § 38B.11, .15 (4th ed. 1990). Moreover, a reasonable fact-finder could easily have found that C.L.O. used more force than necessary to defend himself. See United States v. Walker, 817 F.2d 461, 463 (8th Cir.), cert. denied, 484 U.S. 863 (1987); Devitt, Blackmar, & O'Malley, supra, § 38B.14. Accordingly, the evidence is sufficient to support the district judge's finding of guilt.

In his second argument, C.L.O. urges us to declare that a juvenile possesses a constitutional right to a jury trial in a delinquency proceeding. Based on his view that such a right should exist, he contends the Juvenile Delinquency Act, which permits a juvenile to choose between being tried as an adult with the right to a jury trial and as a juvenile in a delinquency proceeding with

3

no jury, is unconstitutional. <u>See</u> 18 U.S.C. § 5032, fourth undesignated paragraph.

As C.L.O. acknowledges, the settled law is clearly against him.  The Supreme Court held in <u>McKeiver v. Pennsylvania</u> that a juvenile has no Sixth Amendment right to a jury trial. 403 U.S. 528, 545 (1971).  Furthermore, in <u>Cotton v. United States</u>, our court rejected an argument that the Juvenile Delinquency Act is unconstitutional as a violation of the right to a jury trial.  446 F.2d 107, 110-11 (8th Cir. 1971) (relying on <u>McKeiver</u>).

Notwithstanding these precedents, C.L.O. argues that juvenile trials have changed significantly since the Supreme Court decided <u>McKeiver</u> in 1971[2] and urges that these changes have undermined the rationale for the <u>McKeiver</u> decision.  We disagree.  More than a decade after the <u>McKeiver</u> decision, the Supreme Court cited <u>McKeiver</u> approvingly and explained:

> [T]he [C]onstitution does not mandate elimination of all differences in the treatment of juveniles. <u>See, e.g.</u>, <u>McKeiver v. Pennsylvania</u>, 403 U.S. 528 (1971) (no right to jury trial).  The State has "a <u>parens patriae</u> interest in preserving and promoting the welfare of the child," <u>Santosky v. Kramer</u>, 455 U.S. 745, 766 (1982), which makes a juvenile proceeding fundamentally different from an adult criminal trial.

<u>Schall v. Martin</u>, 467 U.S. 253, 263 (1984).  We believe the considerations enumerated in <u>McKeiver</u>, <u>see</u> 403 U.S. at 545-50, ring as true today as they did when the case was decided.  We therefore find not only the holding but also the reasoning of <u>McKeiver</u> to be authoritative.

---

[2]The changes, according to C.L.O., include that juveniles are now fingerprinted, that their pictures are taken, and that the scope of federal jurisdiction over juveniles has changed.

4

Accordingly, we affirm the adjudication of delinquency made by the district court.  As a postscript, we note that the district court inadvertently entered an adult "Judgment in a Criminal Case" rather than a juvenile dispositional order.  We remand for entry of a written dispositional order pursuant to 18 U.S.C. § 5037 containing the same substantive provisions.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

5