**STATE of Minnesota, Appellant,**

v.

**Robert Joseph WERNER, Respondent.**

**No. A06–1378.**

Court of Appeals of Minnesota.

Jan. 9, 2007.

Lori Swanson, Attorney General, St. Paul, MN and Patrick W. Flanagan, Mower County Attorney, Jeremy Clinefelter, Assistant County Attorney, Austin, MN, for appellant.

Terence L. Maus, Tammy L. Shefelbine, O'Brien & Wolf, L.L.P., Rochester, MN, for respondent.

Considered and decided by KLAPHAKE, Presiding Judge, KALITOWSKI, Judge, and WRIGHT, Judge.

## OPINION

KLAPHAKE, Judge.

Respondent Robert Joseph Werner was lawfully stopped and arrested on an outstanding felony warrant on charges of tax evasion. As police spoke with Werner, they observed indicia of intoxication and, without first giving him a *Miranda* warning, asked if he had been drinking. Werner's affirmative response led to the administration of field sobriety, preliminary breath, and Intoxilyzer tests, all of which Werner failed. He was thereafter charged with misdemeanor fourth-degree driving while intoxicated under Minn.Stat. §§ 169A.20, 169A.27 (2004). Following an omnibus hearing, however, the district court granted Werner's motion to suppress and dismissed the complaint.

Because Werner's custody on an unrelated offense did not require a *Miranda* warning, and because the officer's initial question did not rise to the level of interrogation requiring that Werner be given a *Miranda* warning, we reverse the district

court's suppression order and remand for further proceedings.

## FACTS

On August 3, 2005, at approximately 12:30 a.m., Austin Police Officer Jeff McCormack was on patrol with Officer Jacob Stockwell when he observed Werner's unoccupied Cadillac parked in a downtown parking lot. McCormack knew Werner and his vehicle by sight and knew that Werner had an outstanding felony arrest warrant for tax evasion.

The officers observed another vehicle, a newer Lincoln, pull up to the Cadillac and stop; a female passenger got out of the Lincoln, opened the door of the Cadillac, retrieved something, and got back into the Lincoln. The officers followed the Lincoln as it drove away. After a license plate check on the Lincoln confirmed that it was also registered to Werner, the officers initiated a traffic stop. McCormack agreed that Werner had exhibited no improper driving conduct and that the sole purpose of the stop was to arrest Werner on the outstanding warrant.

Officer Stockwell approached the driver's side of the Lincoln and asked Werner to identify himself, which he did. Stockwell ordered Werner out of the vehicle and told him he was under arrest for the outstanding warrant. Stockwell had Werner place his hands on the trunk of the vehicle, patted him down for weapons, and handcuffed Werner with his hands behind his back.

McCormack, who was training Stockwell, testified that he approached the passenger side of the vehicle at the time of the stop and visually verified that Werner was driving. As Stockwell was patting Werner down, Werner stated that he did not know anything about the warrant. As McCormack began to explain the charges to Werner in greater detail, he "noticed [that Werner] had bloodshot, glassy eyes, very bloodshot eyes, glassy, and noticed an odor of alcohol on his breath." At the time, Werner and the two officers were standing by the rear of the vehicle and Werner was handcuffed.

McCormack testified that based on his 10–year experience as a police officer, he "obviously ... suspected [that Werner] had been drinking and thought he might have been impaired at the time we pulled him over." Because Stockwell had never processed a DWI, McCormack took over and conducted the rest of the stop.

McCormack asked Werner if he had been drinking, and Werner admitted that he had. McCormack then asked Werner how much, and Werner responded that he had consumed six or seven drinks.

While Werner was still in handcuffs, McCormack administered two verbal field sobriety tests, which consisted of Werner reciting the alphabet and counting backwards. McCormack thereafter removed the handcuffs and administered the physical tests, consisting of the one leg stand, which Werner failed by exhibiting "[p]oor balance," putting his foot down on three separate counts, and raising his hands away from his sides. The fourth test was the heel-to-toe, in which Werner displayed "wobbly balance" by losing his balance and side stepping on count five and the second half of the test. McCormack told Werner that based upon his performance on the field sobriety tests, he believed that Werner was impaired and that the "only way he would get out of me arresting him for suspicion of DUI" was to take and pass a preliminary breath test. Werner then took the PBT, which he also failed. After being transported to the law enforcement center, Werner was read the Implied Consent Advisory and agreed to perform the

Intoxilyzer, which measured his alcohol concentration level at .09.

McCormack did not provide Werner with a *Miranda* warning at the scene of the stop. McCormack agreed that Werner was polite and cooperative. Werner agreed that McCormack was polite to him and that the two men at one point were "actually conversing."

Following an omnibus hearing, the district court found that Werner was in custody and that the officers should have given him a *Miranda* warning before interrogating him. The court therefore suppressed Werner's admission that he had been drinking and had consumed six to seven drinks. The court also suppressed the results of the field sobriety, preliminary breath, and Intoxilyzer tests, reasoning that this evidence was the "fruit of the poisonous tree." The court found that McCormack gave a "tacit admission" that, but for Werner's admission to consuming alcohol, McCormack would not have administered the additional tests.

## ISSUE

Did the district court err in determining that Werner was entitled to a *Miranda* warning before the officer asked him if he had been drinking?

## DECISION

■ On appeal from a pretrial suppression order based on undisputed facts,

1. On appeal, the state concedes that McCormack's questioning of Werner regarding his alcohol consumption was a *Miranda* violation. While we generally accept a party's concessions, we need not do so when the party has made a concession on a threshold issue that presents a question of law, particularly when we find fault with the district court's analysis on the issue. *See State v. Tibiatowski,* 590 N.W.2d 305, 308 (Minn.1999) (addressing issue of custody even though district court and court of appeals bypassed issue based on parties' stipulation that suspect was in custody);

a reviewing court may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing the evidence. *State v. Othoudt,* 482 N.W.2d 218, 221 (Minn.1992). The state may appeal from a pretrial suppression order, but it must "clearly and unequivocally" show that the order will have a "critical impact" on the state's ability to successfully prosecute the defendant and that the order constituted error. *State v. Scott,* 584 N.W.2d 412, 416 (Minn. 1998). Because the district court here dismissed all charges against Werner, the critical impact requirement is met. *State v. Poupard,* 471 N.W.2d 686, 689 (Minn. App.1991).

■ Statements made by a suspect during a "custodial interrogation" are inadmissible absent *Miranda* warnings, which are procedural safeguards designed to protect the suspect's Fifth Amendment rights. *State v. Heden,* 719 N.W.2d 689, 694–95 (Minn.2006) (citing *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966)). The district court here determined that Werner was "in custody" for purposes of *Miranda* because he was handcuffed and not free to leave.[1] But, as the district court also recognized, an individual who is incarcerated or arrested on an unrelated offense is not necessarily in custody for all *Miranda* purposes. *State v. Tibiatowski,* 590 N.W.2d 305, 309

*State v. Mellett,* 642 N.W.2d 779, 787–88 (Minn.App.2002) (stating that district court's determination regarding custody and necessity of *Miranda* warning are issues of law that appellate court reviews independently), *review denied* (Minn. July 16, 2002). Acceptance of the state's concession on this issue would lead us to render an even faultier decision on the remaining issues. We therefore decline to accept the state's concession and choose to address the dispositive issue of whether Werner was in custody for purposes of *Miranda.*

(Minn.1999). "[W]here there is no evidence of restraint on the suspect's freedom other than that to which the suspect was already subject by reason of his custody for an unrelated offense, the suspect is not in custody for purposes of *Miranda.*" Id. Thus, a defendant must be subject to some additional restraint before he or she is considered in "custody" for purposes of *Miranda.*

■ Here, Werner was placed in handcuffs and informed he was under arrest on the felony warrant. But he was not subject to any additional restraint when McCormack, who smelled alcohol emanating from Werner's person and observed Werner's eyes to be bloodshot and glassy, asked Werner if he had been drinking. While Werner was clearly not free to leave because he was already in custody on the warrant, the issue is whether the "circumstances of the custody [would] cause a reasonable person to feel compelled or coerced to confess to the offense for which the interrogation [was] being conducted." *Id.*

Werner acknowledged that McCormack was polite and that they were "actually conversing." Werner further acknowledged that he understood that while he was under arrest on the warrant, McCormack explained to him that the "only way he could avoid being arrested for the DWI was to take the [preliminary breath] test." Werner makes no claim that he was subjected to any additional restraint or that McCormack's conduct was overly coercive. We therefore conclude that the district court erred in determining that Werner was in "custody" for purposes of *Miranda.* *See, e.g., id.* at 307–09 (juvenile, who was incarcerated on unrelated charges and who made statements about his involvement in an armed robbery in response to case manager's open-ended question about whether there was anything else he wanted to tell her, was not in custody for purposes of Miranda where there was no evidence of any additional coercion or restraint being imposed upon him); *State v. Underdahl,* 607 N.W.2d 786, 788 (Minn. App.2000) (*Miranda* warning not required when inmate was not coerced or subjected to additional restraint and when corrections officer asked inmate where he had been after inmate was late, intoxicated, and disheveled when returning to facility on pass), *review denied* (Minn. May 16, 2000).

■ The district court further determined that McCormack's initial question to Werner regarding whether he had been drinking constituted an interrogation under *Miranda.* Again, the district court's analysis on this issue is faulty: merely because Werner was under arrest on the unrelated warrant and was not free to leave does not decide the question of whether an interrogation occurred for *Miranda* purposes. *See State v. Walsh,* 495 N.W.2d 602, 604–05 (Minn.1993) (*Miranda* warning not required for "[o]n-the-scene" questioning, despite fact that defendant was handcuffed); *State v. Kline,* 351 N.W.2d 388–90 (Minn.App.1984) (noting that *Miranda* does not prohibit all police questioning, such as "general on-site questions"). Because McCormack's question was an appropriate on-site general question under the circumstances presented here, we conclude that the district court erred in determining that it constituted an interrogation and required a *Miranda* warning.

## DECISION

The district court erred in determining that Werner was in custody and that he was interrogated for purposes of *Miranda.* We therefore reverse the district court's decision to grant Werner's suppression

motion and remand for further proceedings consistent with this opinion.

**Reversed and remanded.**