STATE of Minnesota, Respondent,

v.

Roosevelt McCLENTON, Appellant.

No. A09–389.

Court of Appeals of Minnesota.

April 20, 2010.

Lori Swanson, Attorney General, St. Paul, Minnesota; and Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Benjamin J. Butler, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by CONNOLLY, Presiding Judge; HUDSON, Judge; and JOHNSON, Judge.

## OPINION

CONNOLLY, Judge.

Appellant challenges his convictions of first-degree aggravated robbery in violation of Minn.Stat. § 609.245, subd. 1 (2006), and fifth-degree possession of a controlled substance in violation of Minn. Stat. §§ 152.01, subd. 16a, .025, subd. 2(1), 609.101, subd. 3 (2006). Appellant contends the district court committed prejudi-

cial error by refusing to instruct the jury on the lesser-included offenses of theft from person and fifth-degree assault; abused its discretion in precluding evidence on the defense of involuntary intoxication; and erroneously admitted criminal complaints during the *Blakely* trial. Because we conclude that (1) there was no rational basis to convict appellant of the requested lesser-included offenses while acquitting him of the greater charge of aggravated robbery; (2) appellant was not entitled to an involuntary-intoxication defense as a matter of law; and (3) appellant was not prejudiced by the admission of the complaints, we affirm.

## FACTS

Around 7:15 p.m. on October 30, 2007, T.G. was walking down Portland Avenue South in Minneapolis. At the corner of Portland Avenue and 24th Street, a man, later identified as appellant Roosevelt McClenton, approached T.G. and asked him for money in an aggressive and hostile manner. According to T.G., appellant looked "like he was on drugs" and was "very unstable." T.G. told appellant that he did not have any money. However, appellant "kept on pressing [him]" and told T.G. "he was going to kick [his] ass," so T.G. reached into his pocket and gave appellant a $20 bill. Appellant persisted and T.G. gave him another $20 bill and some $1 bills. After T.G. handed over the money, appellant punched him in the head. T.G. fell to the ground. The ordeal ended when appellant told T.G. to "run" and T.G. got up and ran down 24th Street. T.G. suffered a split lip, a knot on his head, and a knot on his cheek bone.

Minneapolis police officers Kenneth Awalt and Christopher Humphrey responded to the scene first. Officer Awalt observed appellant lying on the grass on the corner of Portland and 24th. Appellant was not wearing a shirt and his pants were down around his thigh area. Appellant got up off the ground and was shaking his arms, ranting and raving, and "saying biblical homages." Appellant refused to comply with the officers' orders to get down on the ground. Officer Awalt thought appellant was in a "cocaine psychosis," and called Officer Jeffrey Werner, who had a taser, because people in this situation are "super strong" and "don't have any pain tolerance, and it just would be an all out fight." Officer Werner observed the other officers attempt to mace appellant to no avail. Appellant wandered onto Portland Avenue into traffic. Officer Werner subsequently tased appellant.

Appellant, still struggling and speaking incomprehensibly, was loaded into an ambulance. Inside the ambulance, a paramedic observed appellant "spitting and turning his head a lot." Next to the side of appellant's mouth, she saw a baggie containing a substance she believed to be crack cocaine. The substance was later identified as crack cocaine.

Appellant was charged with first-degree aggravated robbery in violation of Minn. Stat. § 609.245, subd. 1. Prior to trial, defense counsel [1] gave notice of appellant's intent to rely upon the defenses of "Mental Illness or Deficiency" and "Intoxication." The parties appeared before the district court on May 5, 2008. Appellant had previously undergone a Rule 20.02 evaluation by a court-appointed psychologist. The district court noted that while the psychologist found appellant was in a "drug-induced psychosis" at the time of the alleged offense, the psychologist "did not give an opinion" on whether appellant had a viable mental-illness defense "because she believed that a psychosis caused by a *volun-*

---

1. Appellant's appellate counsel was not trial counsel.

*tary* injection of drugs doesn't qualify for a mental-illness defense." (Emphasis added). Based on appellant's assertion of an *involuntary*-intoxication defense, the district court requested an updated opinion.

However, on May 12, 2008, the district court issued an order requiring appellant to "make an offer of proof constituting prima facie evidence that an involuntary-intoxication defense exists in this case" before an updated Rule 20.02 evaluation would be ordered. In the accompanying memorandum, the district court stated:

> On May 5, 2008, defense counsel proffered to the Court that the drug-induced psychosis from which Defendant was suffering at the time of the offense was caused by involuntary intoxication. Specifically, defense counsel proffered that in addition to the Defendant's use of cocaine during the days leading up to the date of offense; the Defendant also smoked marijuana which, the Defendant believes, was "laced" with an unknown substance. According to defense counsel, the Defendant will assert at trial that the psychosis from which he was suffering at the time of the crime was caused by an unanticipated reaction to the drugs he ingested.[2]

(Citation omitted). The district court observed that the availability of an involuntary-intoxication defense based on the voluntary ingestion of an illegal street drug appears to be an issue of first impression in Minnesota and noted that other jurisdictions have "uniformly" rejected the defense "even if, unknown to the defendant, the illegal drug was 'laced' with another substance which caused the defendant to have an unanticipated reaction." Accordingly, appellant was given until May 28, 2008, to make an offer of proof in support of his defense and provide a "memorandum of law citing legal authority for the availability of the defense. Failure to submit this offer of proof and supporting memorandum will result in preclusion of a mental-illness defense at trial." The district court record does not reflect that any such offer of proof or memorandum was ever filed.

An amended complaint was filed, adding one count of fifth-degree possession of a controlled substance in violation of Minn. Stat. §§ 152.01, subd. 16a, .025, subd. 2(1), 609.101, subd. 3. The case was subsequently reassigned to a different district court judge for trial. On the first day of jury selection, the parties discussed the previous order. Defense counsel stated that he viewed the order as precluding the involuntary-intoxication defense. Defense counsel added that he had an expert witness ready, but the expert did not prepare a report in light of the prior order. The district court said it would follow the order as "the law of the case" and "it's also, I believe, a carefully researched and well-thought-out and correct decision in the case, that I believe I would have made ... as the record stands at this point, there is insufficient evidence, both factually and legally to provide testimony on the issue of involuntary intoxication in this case."

The next day, appellant raised questions to the district court about his representation and the ability to present his defense. With the assistance of counsel, it became clear that appellant was talking about testimony by an individual, who was with appellant "immediately before" the alleged offenses and was to testify about appellant's drug use in connection with the involuntary-intoxication defense, and the expert retained by defense counsel. Defense counsel stated these witnesses would not be called in light of the prior preclusion. After a brief inquiry, appellant was con-

---

2. This proffer appears to have occurred off the record.

tent to proceed. The district court also explained that it was not that defense counsel had failed to raise the involuntary-intoxication defense, but that "he was not successful in convincing [the previous judge] or myself that it should be raised, and I think that any attorney would have a hard time, just as your attorney did, would have a hard time getting that raised in a case with these facts."

A jury trial was held and appellant was found guilty of first-degree aggravated robbery and fifth-degree possession. A subsequent *Blakely* trial took place on the aggravating factor of whether there was a pattern of criminal conduct under Minn. Stat. § 609.1095, subd. 4 (2006). Among other things, seven criminal complaints were admitted in connection with appellant's prior offenses. Defense counsel objected to each document, although the record is not entirely clear on the specific grounds for defense counsel's objections.[3] The jury subsequently found a pattern of criminal conduct. In arguing for leniency at sentencing, defense counsel stated:

> [W]e had an expert who we could not use who would say that Mr. McClenton had PCP in his blood. And he had the PCP in his blood not because he wanted to take PCP, but he was taking a different illegal substance, and it was most likely laced with PCP, and it caused an adverse reaction, a reaction that was not—Mr. McClenton wasn't used to. He wasn't planning on having such a drug in his system, and he behaved in a way that he hadn't planned on.

Appellant was sentenced to 180 months in prison, an upward departure from the 111–month presumptive sentence. This appeal follows.

## ISSUES

I. Did the district court commit prejudicial error by refusing to instruct the jury on the lesser-included offenses of theft from person and fifth-degree assault?

II. Did the district court abuse its discretion in precluding appellant from presenting evidence on the defense of involuntary intoxication?

III. Were appellant's substantial rights affected by the introduction of the complaints so as to constitute prejudicial error?

## ANALYSIS

### I.

A person "may be convicted of either the crime charged or an included offense, but not both." Minn.Stat. § 609.04, subd. 1 (2006). An "included offense" is "[a] lesser degree of the same crime." *Id.*, subd. 1(1). Appellate courts review the district court's denial of a requested lesser-included-offense instruction for an abuse of discretion. *State v. Dahlin*, 695 N.W.2d 588, 597 (Minn.2005). In considering whether a lesser-included-offense instruction is warranted, the district court "must consider only whether a ra-

---

**3.** Defense counsel initially raised a foundation objection when the state began to introduce documents related to appellant's prior convictions. This subsequently became a "standing" objection. The state then offered together a plea petition, a sentencing transcript, and a warrant of commitment, to which defense counsel raised a hearsay objection based on "writing on these documents." When the first complaint was introduced along with the plea petition, the plea transcript, and a certified copy of the conviction, defense counsel objected on the grounds of hearsay and lack of foundation. For the remainder of the complaints and other documents related to appellant's prior convictions, defense counsel stated the "same objection." It is not entirely clear whether the "same objection" referred to hearsay or was the "standing" foundation objection.

tional basis exists in the evidence to acquit of the greater charge and convict of the lesser-without considering either the strength of the evidence or the credibility of the witnesses." *Id.* at 596. "[W]here the evidence warrants a lesser-included offense instruction, the [district] court *must* give it." *Id.* at 597. However, the district court's "failure to submit lesser-included offenses to the jury is grounds for reversal only if the defendant is prejudiced thereby." *Id.* (quotation omitted). "[I]n cases in which no evidence is adduced to support acquitting of the greater charge and convicting of the lesser, the lesser instruction is not required." *State v. Hannon,* 703 N.W.2d 498, 511 (Minn.2005).

■ Appellant's defense theory was that "there was a simple robbery and then an assault." Appellant argues that the district court abused its discretion when it denied his request that the jury also be instructed on theft from person and fifth-degree assault as lesser-included offenses within first-degree aggravated robbery. The district court agreed that the theft was subsumed within the aggravated-robbery charge; however, the district court determined that simple robbery was a more appropriate lesser-included offense because there was no rational basis for convicting appellant of theft:

> I can see there is a rational basis for the jury on simple robbery, because the difference between simple and aggravated robbery is the question of whether there was an infliction of bodily harm as part of the robbery.... I don't see how a jury could find the defendant guilty of theft from person. That under the facts here, that [the] only evidence before the jury—you know, direct evidence is [T.G.'s] testimony that it was taken with a threat of force or implied threat of force.

The district court concluded that it was a fact question on whether the robbery was complete at the time of bodily injury or threat of force, and observed that

> [m]aybe something else was happening separate from this, but that isn't a basis to convict somebody to say, well, maybe something else was happening. There has to be proof beyond a reasonable doubt in order to convict; and here there is absolutely no evidence that anything other than aggravated robbery, simple robbery, or he's not guilty. I believe the rest is speculation.

First-degree aggravated robbery occurs when "[a person], while committing a robbery, ... inflicts bodily harm upon another." Minn.Stat. § 609.245, subd. 1. A simple robbery occurs when a person, "having knowledge of not being entitled thereto, takes personal property from [another] ... and uses or threatens the imminent use of force against any person to overcome the person's resistance or powers of resistance to, or to compel acquiescence in, the taking or carrying away of the property." Minn.Stat. § 609.24 (2006). Theft occurs when a person "intentionally and without claim of right takes, uses, transfers, conceals or retains possession of movable property of another without the other's consent and with intent to deprive the owner permanently of possession of the property." Minn.Stat. § 609.52, subd. 2(1) (2006).

■ It is undisputed that theft is a lesser-included offense of aggravated robbery. "Aggravated robbery requires the commission of a theft; if there were no theft the offense would be assault. Thus, theft is a lesser included offense of aggravated robbery." *State v. Nunn,* 351 N.W.2d 16, 19 (Minn.App.1984) (citation omitted); *accord State v. Coleman,* 373 N.W.2d 777, 781 (Minn.1985) (agreeing with *Nunn's* reasoning that theft "is a lesser included offense

of aggravated robbery"). We previously addressed the relationship between fifth-degree assault and simple robbery in *State v. Stanifer*, 382 N.W.2d 213, 218–20 (Minn. App.1986). In *Stanifer*, the defendant was convicted of both simple robbery and fifth-degree assault. *Id.* at 216. Among other reasons, Stanifer appealed his convictions on the basis that fifth-degree assault is a lesser-included offense of simple robbery. *Id.* at 218–19. Vacating the fifth-degree assault conviction, we observed that "[s]imple robbery is basically a theft accomplished by means of an assaultive act." *Id.* at 220. We reasoned that the required "proof of the 'use or threatened imminent use of force against a person' in a prosecution for simple robbery necessarily proves a fifth-degree assault." *Id.* We, therefore, agree with appellant that each of his requested instructions was a lesser-included offense of the offense charged.

However, the district court was only required to give the lesser-included-offense instructions if there was evidence to support acquittal on the greater charge and conviction of the lesser-included offense. *Hannon*, 703 N.W.2d at 511. The district court noted that the simple-robbery instruction accounted for "whether there was an infliction of bodily harm as part of the robbery." The only factual showing before the jury was that appellant had taken T.G.'s money with a threat of force or implied threat of force. Moreover, in *State v. Kvale*, the Minnesota Supreme Court observed:

> In order to elevate a simple robbery to aggravated robbery, the statute requires only that, while committing a robbery, the defendant either be armed with a dangerous weapon or inflict bodily harm. Here, while defendant was already guilty of robbery once he used the threat of force to compel the victim's acquiescence in the taking, that fact does not mean that any infliction of bodi-

ly harm which followed the taking could not be used to elevate the offense to aggravated robbery. The robbery statute speaks of using force or threats to compel acquiescence in either the taking or the carrying away of the property. It does not require that the use of force or threats actually precede or accompany the taking.

302 N.W.2d 650, 653 (Minn.1981). The only evidence before the jury was T.G.'s testimony that appellant punched him in the head immediately after T.G. handed over the second batch of money. This facilitated appellant's carrying away of the money. Because there was no rational basis for the jury to acquit on the greater charge and convict of the lesser, the district court did not abuse its discretion when it declined to give the requested theft-from-person and fifth-degree-assault jury instructions.

Furthermore, even if it was error not to include the instructions, appellant was not likely prejudiced because the jury had the option of convicting appellant of the lesser-included offense of simple robbery, but instead chose to convict on the greater, aggravated robbery charge. *See State v. Harris*, 713 N.W.2d 844, 851 (Minn.2006) ("That the jury convicted Harris of the greater offense, despite the availability of the lesser offense or 'third option,' indicates that Harris suffered no prejudice from the denial of the second-degree felony murder instruction."). The jury had the choice of determining that (1) appellant had inflicted bodily harm on T.G. during the robbery; (2) appellant simply threatened T.G. in order to complete the robbery; or (3) appellant was not guilty. Because the jury found that a robbery had occurred, it follows that the jury would not have found that there was no theft and that only an assault occurred. *See Cooper v. State*, 745 N.W.2d 188, 194 (Minn.2008)

(stating jury's choice to convict defendant of premeditated murder when it had the option to convict him of murder without premeditation indicates it would not have found him guilty of an uninstructed lesser-included offense that did not require premeditation). Likewise, because the jury convicted appellant of first-degree aggravated robbery, necessarily concluding appellant had inflicted bodily harm upon T.G., it follows that the jury would not have found that there was only a theft and that no assault occurred. *See id.*

Because there was no rational basis to convict appellant of theft from person or fifth-degree assault while acquitting him of the greater charge of aggravated robbery, the district court did not commit prejudicial error in denying the requested instructions.

## II.

■■■■ A defendant's constitutional right to due process includes the right to present a complete defense. *State v. Voorhees,* 596 N.W.2d 241, 249 (Minn.1999); *accord* U.S. Const. amend. XIV, § 1; Minn. Const. art. I, § 7. But "the right of a criminal defendant to present a defense is not absolute. The defendant's right to present witnesses is subject to the rules of procedure and evidence designed to assure fairness and reliability in the determination of guilt." *Hannon,* 703 N.W.2d at 506. "The district court has broad discretion in determining what testimony to admit into evidence at trial." *Voorhees,* 596 N.W.2d at 249. A defendant must make a prima facie showing of mental illness or mental deficiency before being allowed to proceed with the defense. *State v. Martin,* 591 N.W.2d 481, 487 (Minn.1999). In considering whether a prima facie showing

has been made, the district court is not "to weigh the evidence offered by a defendant." *Id.*

■■■■ Generally, when a defendant relies upon the use of alcohol or drugs as a defense, "mental illness caused by *voluntary* intoxication is not a defense." *Id.* at 486 (emphasis added). Appellant asserts, however, that he was involuntarily intoxicated at the time of the offenses because, unbeknownst to him, the marijuana he smoked was laced with phencyclidine (PCP).[4] In order to prevail in asserting the defense of involuntary intoxication, appellant must show that: (1) he "was unaware that because of a particular susceptibility to it the substance would have a grossly excessive intoxicating effect" or "was innocently mistaken as to the nature of the substance taken"; (2) the "intoxication was caused by the intoxicating substance in question and not by some other intoxicant"; and (3) he was temporarily mentally ill at the time of the offenses. *See Voorhees,* 596 N.W.2d at 250 (stating elements to proving a defense of involuntary intoxication).

■■■■ There are two types of involuntary intoxication arguably at issue in this case: "pathological intoxication," which is "intoxication grossly excessive in degree, given the amount of the intoxicant, to which the actor does not know he is susceptible," and "innocent" intoxication, "when intoxication results from an innocent mistake by the defendant about the character of the substance taken, as when another person has tricked him into taking the liquor or drugs." *City of Minneapolis v. Altimus,* 306 Minn. 462, 468–69, 238 N.W.2d 851, 856 (1976). As the district court observed, the issue of whether invol-

---

4. PCP is a controlled substance. *See* Minn. Stat. § 152.02, subd. 3(4)(e), (f) (2006) (listing phencyclidine and phencyclidine immediate precursors as Schedule II controlled substances).

untary intoxication exists when a person voluntarily uses an illegal controlled substance unknowingly laced with some other illegal controlled substance which causes an unanticipated reaction is an issue of first impression for Minnesota state courts.

 Minnesota law places the burden on the defendant to make a prima facie showing of mental illness or deficiency before the defense will be allowed. *Martin,* 591 N.W.2d at 487. The extent of the record regarding appellant's showing to the district court is contained in the May 12 order: "Specifically, defense counsel proffered that in addition to the Defendant's use of cocaine during the days leading up to the date of offense; the Defendant also smoked marijuana which, the Defendant believes, was 'laced' with an unknown substance." The district court concluded that, before it would order an updated Rule 20.02 examination, this offer of proof was required because "a bare assertion by a defendant that he or she smoked marijuana that must have been laced with something is likely insufficient to constitute prima facie evidence of that defense." Appellant argues that this was erroneous and shows weighing of the evidence. Appellant asserts that the defense was not based upon a "bare assertion," but was based upon a fact witness who would testify to appellant's drug use, tests revealing the presence of PCP in appellant's blood, and expert testimony concerning the effects of PCP.

We disagree. As the state points out, these details were not brought out until the sentencing hearing. We agree with the state that "[l]ogically, statements made at the sentencing hearing by appellant's attorney, which statements were made well after trial, cannot be construed to be part of a pretrial prima facie showing." The record does not specifically indicate what appellant provided to the district court in the "initial" showing. It is clear, however, that defense counsel never submitted any additional evidence to make the prima facie showing or legal argument addressing the defense. Because appellant failed to make the requisite factual showing, the district court did not abuse its discretion by precluding the defense of involuntary intoxication. But in any event, it is not really necessary for us to resolve any issues related to the timing or sufficiency of the offer of proof in order to decide this question because we do not believe that the defense of involuntary intoxication is available to appellant under the facts of this case.

We initially observe that marijuana is a controlled substance in Minnesota. Minn. Stat. §§ 152.01, subd. 9 (defining "marijuana"), .02, subd. 2(3) (classifying marijuana as a Schedule I controlled substance) (2006). Additionally, we agree with the California appellate court's observation in *People v. Velez* that

[i]t is common knowledge that unlawful street drugs do not come with warranties of purity or quality associated with lawfully acquired drugs such as alcohol. Thus, unlike alcohol, unlawful street drugs are frequently not the substance they purport to be or are contaminated with other substances not apparent to the naked eye.

175 Cal.App.3d 785, 221 Cal.Rptr. 631, 637 (1985); *see* Minn.Stat. § 152.01, subd. 9a (2006) (defining a controlled-substance "mixture" as "a preparation, compound, mixture, or substance containing a controlled substance, regardless of purity").

Appellant cites several cases from other state and federal jurisdictions, arguing the availability of such a defense. *See, e.g., People v. Brumfield,* 72 Ill.App.3d 107, 28 Ill.Dec. 422, 390 N.E.2d 589, 592–93 (1979) (holding district court erroneously preclud-

ed evidence of involuntary intoxication as a defense to charge of rape based on defendant's offer of proof that he smoked marijuana which he did not know contained "angel dust" and voluntarily drank alcohol, the combined effect of which led to the defendant's involuntary acts); *but cf. People v. Hari*, 218 Ill.2d 275, 300 Ill.Dec. 91, 843 N.E.2d 349, 360 (2006) (contrasting defendant's alleged involuntary intoxication as· an adverse drugged condition resulting from prescribed medication with cases in which the defendant's "drugged condition was a result of the defendant's conscious choice"). We recognize that although we are not bound to follow precedent from other states or federal courts, these authorities can be persuasive. *See State by Ulland v. Int'l Ass'n of Entrepreneurs of Am.*, 527 N.W.2d 133, 136 (Minn. App.1995) ("Furthermore, this court is not bound by precedent from other states or the federal courts."), *review denied* (Minn. Apr. 18, 1995); *Sonenstahl v. L.E.L.S., Inc.*, 372 N.W.2d 1, 4 (Minn.App.1985) (stating "federal decisions may be persuasive where the Minnesota courts have not addressed a subject").

The Eighth Circuit has considered an involuntary-intoxication defense based on the voluntary ingestion of an illegal drug purportedly laced with another substance. In *United States v. F.D.L.*, the defendants argued involuntary intoxication, claiming they smoked marijuana that was unknowingly laced with PCP. 836 F.2d 1113, 1115–16 (8th Cir.1988). During the bench trial, the defendants were allowed to present evidence that a witness saw a white powder being added to the marijuana cigarettes; PCP was commonly added to marijuana cigarettes; PCP was a problem on the reservation; and one of the defendants was acting consistently with the effects of PCP. *Id.* at 1115, 1117. While the Eighth Circuit observed that the district court made no specific findings on the issue of involuntary intoxication, it concluded that the defendants were able to appreciate the nature of their acts, thus rejecting an essential element of involuntary intoxication that "the defendants were unable to appreciate the nature and quality or wrongfulness of their acts." *Id.* at 1117. The Eighth Circuit went on to hold that any intoxication from the voluntary smoking of marijuana is not a defense. *Id.* at 1117–18.

In *United States v. Bindley*, the Tenth Circuit observed that a "key component [in an involuntary-intoxication defense] is the lack of culpability on the part of the defendant in causing the intoxication." 157 F.3d 1235, 1242 (10th Cir.1998) (discussing the four general types of involuntary intoxication with citation to *Altimus*, 306 Minn. at 468–70, 238 N.W.2d at 856–57). In *Bindley*, the defendant was convicted of armed bank robbery, use of a firearm during and in relation to a crime of violence, and conspiracy to commit bank robbery. *Id.* at 1237. At trial, the defendant "testified that prior to the robbery he smoked a marijuana cigarette that must have been laced with another drug." *Id.* at 1241. "[T]he marijuana cigarette tasted funny and made him feel different than he had felt ·after smoking other marijuana cigarettes." *Id.* Based on this testimony, the defendant requested that the jury be instructed on the defense of involuntary intoxication, which the district court refused. *Id.* Affirming the convictions, the Tenth Circuit observed that the illegal act of smoking marijuana removed any innocence from the conduct resulting in the defendant's intoxication. *Id.* at 1243. "[B]y voluntarily choosing to smoke the marijuana cigarette, any resulting intoxication (whatever that may have been) was likewise voluntary." *Id.; cf. F.D.L.*, 836 F.2d at 1118 n. 7 (noting the availability of an involuntary-intoxication defense "based on

the ingestion of an unlawful drug where the defendant believed he was consuming a lawful substance or where the unlawful drug was placed without defendant's knowledge in a *lawful* substance").

As the state points out, appellant cannot claim that he was pathologically intoxicated because such intoxication occurs when a person, unaware of a particular susceptibility to a substance, experiences a grossly excessive intoxication as a result of using that substance. *See Altimus,* 306 Minn. at 469, 238 N.W.2d at 856 ("Pathologically intoxicated offenders have been held not criminally responsible for their acts when they ingested the intoxicant not knowing of their special susceptibility to its effects."). Appellant does not claim that he was particularly susceptible to marijuana; appellant asserts that he became involuntarily intoxicated because of the effects of the PCP. Appellant did not knowingly consume PCP and, therefore, could not have been pathologically intoxicated as such intoxication results when a substance is knowingly ingested and the result from *that* substance was unexpected due to an unknown susceptibility. *Id.* Moreover, by voluntarily consuming an illegal drug, appellant cannot claim that he was innocently mistaken as to the nature of the drug. To hold otherwise would effectively permit an involuntary-intoxication defense for individuals who use less "pure" drugs. *See* Minn.Stat. § 152.01, subd. 9a (stating a controlled-substance mixture is determined without regard to purity). While our supreme court has not yet addressed the issue, we do not believe it would find such logic persuasive. A person in appellant's position simply cannot argue involuntary intoxication because, by voluntarily choosing to smoke marijuana, any resulting intoxication (whatever that may have been) was likewise voluntary. Accordingly, we hold that a defendant who voluntarily smokes marijuana, which unbeknownst to him is laced with some other controlled substance, is not entitled to an involuntary-intoxication defense based on the resultant effects of the combined substances.

Because we conclude as a matter of law that appellant was not entitled to present an involuntary-intoxication defense based on the voluntary ingestion of an illegal controlled substance, we decline to address appellant's ineffective-assistance-of-counsel claim or defense counsel's failure to provide the required prima facie showing.

## III.

■ Generally, evidentiary rulings lie within the sound discretion of the district court "and will not be reversed absent a clear abuse of discretion." *State v. Caulfield,* 722 N.W.2d 304, 308 (Minn.2006). As noted above, the record is not entirely clear on the objections raised by defense counsel during the sentencing phase of trial.[5] *See State v. Tovar,* 605 N.W.2d 717, 726 (Minn.2000) ("Absent clear and specific objections raised before the district court, [appellate courts] will generally not consider issues of admissibility of evidence raised for the first time on appeal.").

■ Appellant appears to have confined his appeal to whether admission of the complaints violated his rights under the Confrontation Clause. "[W]hether the admission of evidence violates a criminal defendant's rights under the Confrontation Clause is a question of law [appellate courts] review[ ] de novo." *Caulfield,* 722 N.W.2d at 308. Appellant concedes that defense counsel did not challenge the admission of the criminal complaints on Confrontation Clause grounds at trial. When a defendant fails to object to the admission

5. *See supra* note 3.

of evidence at trial, this court reviews the admission for plain error, including constitutional challenges. *State v. Tscheu,* 758 N.W.2d 849, 863 (Minn.2008); *State v. Johnson,* 756 N.W.2d 883, 889 (Minn.App. 2008). To warrant reversal, "there must be (1) error; (2) that is plain; and (3) the error must affect substantial rights." *State v. Griller,* 583 N.W.2d 736, 740 (Minn.1998).

■ Appellant contends that the seven criminal complaints introduced by the state to prove that his present offenses were "committed as part of a pattern of criminal conduct" for sentence enhancement under Minn.Stat. § 609.1095, subd. 4, were inadmissible hearsay, admitted in violation of appellant's Confrontation Clause rights, and highly prejudicial. The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. "The Supreme Court in *Crawford* held that statements from witnesses who do not testify at trial are not admissible unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant if the statements are 'testimonial.'" *Johnson,* 756 N.W.2d at 889 (citing *Crawford v. Washington,* 541 U.S. 36, 59, 124 S.Ct. 1354, 1369, 158 L.Ed.2d 177 (2004)). The state concedes that the probable-cause portion of the complaints, with the one exception,[6] were erroneously admitted and that the error was plain. *See State v. Wright,* 719 N.W.2d 910, 917 n. 1 (Minn.2006) ("Statements in a complaint are hearsay, implicating confrontation concerns.").

With both the first and second prongs of the plain-error test established, we consider whether the error affected appellant's substantial rights. *See Griller,* 583 N.W.2d at 741. The third prong "is satisfied if the error was prejudicial and affected the outcome of the case." *Id.* Appellant bears the "heavy burden" of persuasion on this last prong. *Id.* Although conceding that it was plain error to admit the complaints, the state argues that "there is no reasonable likelihood that the error had a significant effect on the verdict of the sentencing jury." We agree.

■ Under Minn.Stat. § 609.1095, subd. 4, the district court "may impose an aggravated durational departure from the presumptive sentence up to the statutory maximum sentence if the factfinder determines that the offender has five or more prior felony convictions and that the present offense is a felony that was committed as part of a pattern of criminal conduct." A finding of a pattern of criminal conduct "goes beyond solely the fact of a prior conviction." *State v. Henderson,* 706 N.W.2d 758, 762 (Minn.2005). A pattern of criminal conduct "may be demonstrated by reference to past felony or gross misdemeanor convictions or by proof, through clear and convincing evidence, of prior, uncharged acts of criminal conduct, where such acts are similar to the present offense in motive, purpose, results, participants, victims or other characteristics." *State v. Gorman,* 546 N.W.2d 5, 9 (Minn.1996).

The state presented evidence of appellant's convictions of: (1) fifth-degree possession of crack cocaine; (2) criminal vehicular operation; (3) felon in possession of a pistol; (4) attempted simple robbery; (5) third-degree sale of a controlled substance; (6) attempted theft from person; (7) attempted third-degree possession of a con-

---

**6.** As for the Exhibit 28 complaint, appellant admitted the truth of the complaint at his plea hearing.

trolled substance; and (8) attempted sale of a simulated controlled substance. Because the state concedes that the admission of the probable-cause portion of the complaints was in error, the section in which the "facts" and circumstances of the alleged crime are contained, we look to whether the record contained other evidence by which the jury could have found that appellant's prior convictions formed a pattern of criminal conduct. We begin by noting that appellant's three attempted-simple-robbery convictions are not at issue because appellant admitted the facts contained in the complaint as true at the plea hearing for the offense in which a complaint was introduced, and the sentencing transcript from the hearing in which the second two offenses were handled concurrently contained a factual basis, albeit brief.

### A. Proof by Conviction Alone

 We next consider appellant's convictions of felon in possession of a pistol, attempted theft from person, and attempted sale of a simulated controlled substance. We conclude that these offenses should not have been used to determine whether appellant engaged in a pattern of criminal conduct as the record contained no "facts" by which the jury could determine whether the offenses had similar characteristics. For appellant's felon-in-possession-of-a-pistol conviction, the state offered the plea petition, the sentencing transcript, and a certified copy of the conviction. There were no facts surrounding the offense contained in any of these documents. For appellant's attempted-theft-from-person conviction, the state introduced the complaint and the plea petition. Without the complaint, there were no facts surrounding

this offense. Likewise, for appellant's attempted-sale-of-a-simulated-controlled-substance conviction, the state introduced the complaint, the plea petition, and a certified copy of the conviction. Again, the complaint was the sole document containing the circumstances of the crime. Without a factual basis concerning these convictions, the use of these offenses amounted to attempted proof by the fact of conviction alone. *See Henderson*, 706 N.W.2d at 762.

### B. "Complaint" Crimes

We now turn to those convictions for which a complaint was submitted in addition to other documentation. As the plea transcript reflects, appellant's convictions of fifth-degree possession of crack cocaine and criminal vehicular operation were handled at the same hearing. The transcript details that appellant possessed crack cocaine and, while he was under the influence of a controlled substance, had a car accident in which a person suffered serious injuries as a result.[7] A reading of the complaints shows that appellant also tried to flee the scene and tried to discard the drugs once stopped by an officer.

Similarly, for appellant's conviction of attempted third-degree possession of a controlled substance, the plea transcript shows that appellant possessed cocaine and marijuana.[8] The complaint adds that officers witnessed appellant remove something from his groin area; "[o]fficers know that it is common for dealers of narcotics to conceal drugs in their groin area or their rectum"; a narcotics sale was witnessed; appellant lied to police about where the money came from; appellant

---

7. The plea petition for these offenses and a certified copy of the conviction for fifth-degree possession were also introduced.

8. The state also introduced the plea petition, a certified copy of the conviction, and the sentencing transcript.

tried to conceal additional marijuana in his groin; and appellant "reached between his buttocks and removed a large baggie of suspected cocaine," immediately sticking it in his mouth and beginning to chew. We understand, as appellant argues, that it is difficult to see how this information is not "grossly and unfairly prejudicial."

Finally, regarding appellant's conviction of third-degree sale of a controlled substance, the plea and sentencing transcript shows appellant admitting that he "knew that it was drugs that [he was] basically selling somebody" and that the substance tested positive for cocaine.[9] The complaint was also introduced, but appellant does not argue, and review of the complaint does not appear to show, that it contained any prejudicial statements concerning the circumstances of the crime.

■■■ Although we recognize that the complaints certainly do not cast appellant in a favorable light, appellant has a heavy burden to show that their admission constituted prejudicial error. *See Griller*, 583 N.W.2d at 741. A review of the record reflects that, even without the erroneously submitted complaints, the jury would likely have concluded that appellant had engaged in a pattern of criminal conduct to support his illegal drug habit. Appellant's convictions of three attempted simple robberies, third-degree sale of a controlled substance, fifth-degree possession, criminal vehicular operation, and attempted third-degree possession supplied a sufficient factual basis to show that his present convictions were part of a pattern of criminal conduct related to his habitual illegal drug use for purposes of Minn.Stat. § 609.1095, subd. 4.

Appellant's felony convictions occurred over a span of almost ten years and plainly evidenced a cyclical pattern of violent offenses and drug offenses. Thus, although the district court's admission of the complaints was in error, the record reflects that appellant has not met his burden to show that he was prejudiced by their admission and his enhanced sentence is affirmed.

## DECISION

The district court did not commit prejudicial error in declining to instruct the jury on the lesser-included offenses of theft from person and fifth-degree assault as there was no rational basis to convict appellant of these offenses while acquitting him of first-degree aggravated robbery. Notwithstanding the fact that appellant failed to make the requisite prima facie showing, appellant is precluded as a matter of law from raising the defense of involuntary intoxication when he voluntarily smoked marijuana which, unbeknownst to him, was laced with PCP and caused an unanticipated reaction. Although it was error for the district court to admit the criminal complaints, appellant has not shown that his substantial rights were prejudiced by their admission.

**Affirmed.**

---

9. The state also introduced the plea petition and a certified copy of the conviction.