*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0268**

State of Minnesota,
Respondent,

vs.

Marlow Shelton McDonald,
Appellant.

**Filed February 16, 2016
Affirmed
Schellhas, Judge**

Blue Earth County District Court
File No. 07-CR-14-1678

Lori Swanson, Attorney General, Michael Everson, Assistant Attorney General, St. Paul, Minnesota; and

Pat McDermott, Blue Earth County Attorney, Mankato, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rochelle R. Winn, Roy Spurbeck, Assistant Public Defenders, St. Paul, Minnesota (for appellant)

Considered and decided by Reilly, Presiding Judge; Schellhas, Judge; and Rodenberg, Judge.

**UNPUBLISHED OPINION**

**SCHELLHAS**, Judge

Appellant challenges his controlled-substance, firearms-related, and fleeing-a-peace-officer-in-a-motor-vehicle convictions and his aggravated durational departure sentence. Appellant also asserts various pro se claims. We affirm.

**FACTS**

In five separate controlled purchases in April 2014, appellant Marlow Shelton McDonald sold a total of about 12 grams of methamphetamine to a confidential informant. On May 7, police officers initiated a traffic stop of a car driven by McDonald for the purpose of arresting him for controlled-substance crime. Attempting to evade the stop, McDonald rammed the car into an unmarked, occupied law-enforcement truck; accelerated toward a uniformed, on-foot officer, who fired his sidearm at the car; and led a chase until officers disabled the car and arrested McDonald. In a warranted search of the car, officers seized items including a loaded semi-automatic handgun and about six grams of methamphetamine.

On May 9, 2014, respondent State of Minnesota charged McDonald with first-degree controlled-substance crime (sale of at least ten grams of methamphetamine within 90-day period), second-degree controlled-substance crime (possession of at least six grams of methamphetamine), two counts of first-degree assault (deadly force against peace officer), possession of a firearm by a prohibited person (crime of violence), and qualifying person in possession of a firearm (crime of violence). The state filed notice of intent to seek an upward departure sentence on bases that included McDonald's status as a career

offender. At a May 9 bail hearing, McDonald demanded a speedy trial. At a June 6 hearing, McDonald again demanded a speedy trial, and the district court set trial for August 6.

On June 12, 2014, McDonald moved the district court regarding various matters, including the pace of discovery disclosures, upward departure sentencing, and sentencing manipulation. The state argued that McDonald's motion constituted good cause to continue the trial date. The court agreed and continued the trial to September 10. McDonald reasserted his speedy-trial demand at a July 30 hearing. The court subsequently denied in part and reserved in part the relief requested by McDonald in his June 12 motion. McDonald then moved, among other things, to exclude evidence of his prior convictions for impeachment purposes. The court conducted a hearing, denied McDonald's motion, and granted the state's motion to amend the complaint to add charges of third-degree controlled-substance crime (possession of at least three grams of methamphetamine) and fleeing a peace officer in a motor vehicle.

On September 10, 2014, the district court commenced McDonald's jury trial and, at the conclusion of the trial on September 15, instructed the jury on the lesser-included offenses of second-degree controlled-substance crime (sale of at least three grams of methamphetamine within 90-day period) and second-degree assault (dangerous weapon). The jury found McDonald guilty of first-degree controlled-substance crime, second-degree controlled-substance crime (sale), third-degree controlled-substance crime, possession of a firearm by a prohibited person, qualifying person in possession of a firearm, and fleeing a peace officer in a motor vehicle. The jury acquitted McDonald of first- and second-degree assault. After a separate sentencing proceeding, the jury found that McDonald had five or

3

more prior felony convictions and that his present crimes were committed as part of a pattern of criminal conduct.

McDonald moved the district court regarding his claim of sentencing manipulation. After a hearing, the court denied the motion and sentenced McDonald to 316 months' imprisonment for first-degree controlled-substance crime, an aggravated durational departure; 60 months' concurrent imprisonment for prohibited person in possession of a firearm; 57 months' concurrent imprisonment for third-degree controlled-substance crime; and consecutive imprisonment for 12 months and 1 day for fleeing a peace officer in a motor vehicle.

This appeal follows.

**DECISION**

*Impeachment by prior convictions*

Any witness—including a defendant who wishes to testify in his own defense—may be impeached by evidence that he was convicted of a felony if (1) no more than ten years have elapsed since the date of conviction or since the witness was released from confinement for that conviction, and (2) the district court determines that the probative value of admitting the evidence of conviction outweighs its prejudicial effect. Minn. R. Evid. 609(a)(1), (b); *State v. Zornes*, 831 N.W.2d 609, 626–27 (Minn. 2013). "[Appellate courts] will not reverse a district court's ruling on the impeachment of a witness by prior conviction absent a clear abuse of discretion." *State v. Hill*, 801 N.W.2d 646, 651 (Minn. 2011) (quotation omitted). "Five factors guide the exercise of a district court's discretion

under Rule 609(a)." *Id.* at 653 (citing *State v. Jones*, 271 N.W.2d 534, 538 (Minn. 1978)).

These factors are:

> (1) the impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach), (4) the importance of defendant's testimony, and (5) the centrality of the credibility issue.

*Jones*, 271 N.W.2d at 538.

A district court errs if it fails to make a record of its consideration of the *Jones* factors. *See State v. Davis*, 735 N.W.2d 674, 680 (Minn. 2007) ("[I]t is error for a district court to fail to make a record of its consideration of the *Jones* factors, though the error is harmless if it is nonetheless clear that it was not an abuse of discretion to admit evidence of the convictions."). Even if a district court's "consideration of the *Jones* factors" is "obvious," the court's "fail[ure] to make a record of the *Jones* factor analysis" is error. *State v. Swanson*, 707 N.W.2d 645, 655 (Minn. 2006).

Here, the district court did not make a record of its analysis of the *Jones* factors, even though the prosecutor asked the court to do so. This was error. McDonald concedes that evidence of three of his prior convictions was admissible under Minn. R. Evid. 609(a)(2), (b), as crimes involving dishonesty or false statement. We therefore apply the *Jones* factors to the following five remaining prior convictions to determine whether the district court abused its discretion in ruling that evidence of McDonald's prior convictions was admissible for impeachment purposes: August 2004, January 2005, July 2005, and March 2012 convictions of fifth-degree controlled-substance crime (possession of

5

controlled substance classified in schedule I, II, III, or IV), and a December 2005 conviction of possession of a firearm by a prohibited person (crime of violence).

*Impeachment value of prior crime*

"[A]*ny* felony conviction is probative of a witness's credibility, and the mere fact that a witness is a convicted felon holds impeachment value." *Hill*, 801 N.W.2d at 652. This factor weighs in favor of admission.

*Date of conviction and defendant's subsequent history*

While "[the supreme court] ha[s] recognized that a history of lawfulness since a conviction can limit a conviction's probative value," it also has stated that "if a witness is convicted again or sent back to prison, then the witness's history of lawlessness enhances an otherwise stale conviction's probative value." *Zornes*, 831 N.W.2d at 627 (quotations omitted). Although McDonald's August 2004 conviction of fifth-degree controlled-substance crime was nearly ten years old by the date of the charged crimes, the probative value of that conviction is enhanced by McDonald's January and July 2005 convictions of fifth-degree controlled-substance crime and by his December 2005 conviction of possession of a firearm by a prohibited person. Similarly, McDonald's March 2012 conviction of fifth-degree controlled-substance crime shows continued lawlessness and enhances the probative value of the 2004 and 2005 convictions. This factor therefore weighs in favor of admission.

*Similarity of past crime with charged crime*

Although the state concedes that McDonald's past controlled-substance crimes and firearms crime are similar to the charged controlled-substance crimes and firearms crimes,

6

the state correctly notes that prejudice could have been reduced by referring to McDonald's similar prior convictions as "unspecified felony convictions." *See Hill*, 801 N.W.2d at 652–53 ("If a court finds that the prejudicial effect of disclosing the nature of a felony conviction outweighs its probative value, then it may still allow a party to impeach a witness with an unspecified felony conviction if the use of the unspecified conviction satisfies the balancing test of Rule 609(a)(1)."). While this factor weighs against admission, we note that McDonald did not ask the district court to admit the convictions as unspecified felony convictions.

*Importance of defendant's testimony and centrality of credibility issue*

"If credibility is a central issue in the case, the fourth and fifth *Jones* factors weigh in favor of admission of the prior convictions." *Swanson*, 707 N.W.2d at 655. McDonald states, "No doubt [his] credibility was important in this case." We generally accept a party's concessions. *State v. Werner*, 725 N.W.2d 767, 770 n.1 (Minn. App. 2007). The fourth and fifth factors therefore weigh in favor of admission.

In sum, four of the five *Jones* factors weigh in favor of admission and only one weighs lightly against admission. We conclude that the district court did not abuse its discretion in ruling that evidence of McDonald's prior convictions was admissible for impeachment purposes.

**Prosecutorial misconduct**

"[Appellate courts] review prosecutorial misconduct to determine whether the conduct, in light of the whole trial, impaired the defendant's right to a fair trial." *State v. Milton*, 821 N.W.2d 789, 802 (Minn. 2012) (quotations omitted). "If defense counsel did

not object to the alleged prosecutorial misconduct, [appellate courts] review the alleged misconduct under [a] modified plain error test." *Id.* (quotations omitted). "Under [the] modified plain error test, the defendant has the burden of proving that an error was made and that the error was plain." *Id.* "An error is plain if it is clear or obvious; this means an error that violates or contradicts case law, a rule, or an applicable standard of conduct." *State v. Mosley*, 853 N.W.2d 789, 801 (Minn. 2014), *cert. denied*, 135 S. Ct. 1185 (2015). "If the defendant is able to satisfy this burden, the burden shifts to the State to demonstrate that the error did not affect the defendant's substantial rights." *Milton*, 821 N.W.2d at 802 (quotation omitted).

During the sentencing proceeding in this case, the prosecutor presented evidence of seven of McDonald's prior felony convictions as relevant to his career-offender status and introduced a certified copy of the warrant of commitment for McDonald's March 2012 conviction of fifth-degree controlled-substance crime. After the exhibit was admitted into evidence, the prosecutor explained to the jury:

> Finally the last conviction that I intend to present to you today is Exhibit #58. . . . [T]his document is certified [and] it indicates what the . . . original charges were; charges you will recognize; controlled substance crime in the second and third degree . . . and unlawful person in possession of a firearm; a fourth degree drugs charge and then another fifth degree drugs charge; you will see that [McDonald] was convicted of a controlled substance crime in the fifth degree . . . and you will also see that this sentence included a commit to the Commissioner of Corrections, which means that that prison sentence was imposed[.] . . . And that—the State would represent felony conviction number seven . . . .

8

McDonald did not object in district court to the prosecutor's statements, but he now argues that the prosecutor "focused the jury's attention to a number of dismissed charges listed on the exhibit" and suggested that the jury should consider the dismissed charges as evidence of a pattern of criminal conduct, an element of career-offender status. According to McDonald, the prosecutor thereby committed plain error by "misstat[ing] the evidence" and "mislead[ing] the jury regarding the inferences it [was permitted to] draw from the evidence."

We conclude that the prosecutor's statements accurately described the contents of an exhibit that already had been received into evidence. The dismissed charges had not been redacted and were apparent from the face of the exhibit, which was provided to the jury during its deliberations, along with the other trial exhibits. McDonald fails to explain how the prosecutor's brief mention of the "original charges"—immediately followed by the prosecutor's verbal identification of the single offense of conviction—in any way misstated the documentary evidence before the jury or invited the jury to infer McDonald's guilt of dismissed charges. McDonald has failed to meet his burden to prove that the prosecutor committed plain error.

*Pattern of criminal conduct*

McDonald argues that evidence of seven of his prior felony convictions, including four convictions of fifth-degree controlled-substance crime and a conviction of possession of a firearm by a prohibited person, was insufficient to support the jury's finding that his present crimes were committed as part of a pattern of criminal conduct because "the State did not introduce any evidence either regarding the circumstances of [McDonald's] prior

9

convictions or supporting its theory that [McDonald] had committed the offenses as a pattern."

Minnesota law provides:

> Whenever a person is convicted of a felony, and the judge is imposing an executed sentence based on a Sentencing Guidelines presumptive imprisonment sentence, the judge may impose an aggravated durational departure from the presumptive sentence up to the statutory maximum sentence if the factfinder determines that the offender has five or more prior felony convictions and that the present offense is a felony that was committed as part of a pattern of criminal conduct.

Minn. Stat. § 609.1095, subd. 4 (2012). "'[P]attern of criminal conduct' may be demonstrated by reference to past felony or gross misdemeanor convictions or by proof, through clear and convincing evidence, of prior, uncharged acts of criminal conduct, where such acts are similar to the present offense in motive, purpose, results, participants, victims or other characteristics." *State v. Gorman*, 546 N.W.2d 5, 9 (Minn. 1996). "[D]etermination of a pattern of criminal conduct involves a comparison of different criminal acts, weighing the degree to which those acts are sufficiently similar. This determination goes beyond a mere determination as to the fact, or number, of the offender's prior convictions." *State v. Henderson*, 706 N.W.2d 758, 762 (Minn. 2005) (quotation omitted). "In reviewing a challenge to the sufficiency of the evidence [to support a finding that the present offense was committed as part of a pattern of criminal conduct], [appellate courts] are limited to determining whether the evidence was sufficient to support the conclusion reached by the jury," after "review[ing] the record in the light most favorable to the jury's determination."

10

*State v. Outlaw*, 748 N.W.2d 349, 357 (Minn. App. 2008), *review denied* (Minn. July 15, 2008).

McDonald is correct that the state did not introduce evidence of the factual bases for his prior crimes. And this court previously has concluded that evidence of prior crimes, in the absence of evidence of the factual bases for those crimes, "should not have been used to determine whether [the] appellant engaged in a pattern of criminal conduct as the record contained no 'facts' by which the jury could determine whether the offenses had similar characteristics." *State v. McClenton*, 781 N.W.2d 181, 194 (Minn. App. 2010), *review denied* (Minn. June 29, 2010), *cert. denied*, 131 S. Ct. 530 (2010).

But *McClenton* is distinguishable on two grounds. First, the present crimes in *McClenton* were first-degree aggravated robbery and fifth-degree controlled-substance crime, while the prior crimes were possession of a firearm by a prohibited person, attempted theft from person, and attempted sale of a simulated controlled substance. *Id.* at 183, 194. In contrast, McDonald's four prior controlled-substance crimes were facially identical to one another and facially similar to his present controlled-substance crimes, and his prior firearms crime was facially identical to one of his present firearms crimes and facially similar to the other of his present firearms crimes. This facial overlap permitted the jury to reasonably conclude that McDonald's present crimes and some of his prior crimes shared similar characteristics. *Cf. Outlaw*, 748 N.W.2d at 357 (concluding that "evidence was sufficient to support the jury's determination that appellant's prior convictions establish a pattern of criminal conduct" where "jury could reasonably have concluded that appellant's seven other burglary convictions, and one conviction of attempted burglary,

11

share similar characteristics with [present] first-degree burglary conviction"). Second, the state specifically pointed to evidence that gaps in McDonald's criminal history aligned with periods during which he was incarcerated. The *McClenton* opinion discusses no such evidence. 781 N.W.2d at 186 & n.3, 193–95.

Viewing the evidence in the light most favorable to the jury's determination, we conclude that the evidence was sufficient to support the jury's findings that McDonald's present crimes were committed as part of a pattern of criminal conduct.

### Aggravated durational departure

"[Appellate courts] review a district court's decision to depart from the presumptive guidelines sentence for an abuse of discretion. If the reasons given are legally permissible and factually supported in the record, then [a reviewing court] will affirm the departure." *Vickla v. State*, 793 N.W.2d 265, 269 (Minn. 2011) (quotation and citation omitted).

Minnesota law provides for an aggravated durational departure up to the statutory maximum sentence "if the factfinder determines that the offender has five or more prior felony convictions and that the present offense is a felony that was committed as part of a pattern of criminal conduct." Minn. Stat. § 609.1095, subd. 4. "The statute does not limit the court's discretion and does not require any additional findings before sentencing a defendant to the statutory maximum." *Vickla*, 793 N.W.2d at 269. "Moreover, the Sentencing Guidelines provide that a defendant's status as a 'career offender' under section 609.1095, subdivision 4, is a sufficient reason to depart from the presumptive sentence." *Id.* (quoting Minn. Sent. Guidelines II.D.2.b.(9) (2010)). A district court therefore acts within its discretion by granting an aggravated durational departure up to the statutory

maximum sentence so long as the departure is based on factually supported jury findings that the defendant had at least five prior felony convictions and that the present felony was committed as part of a pattern of criminal conduct.

In this case, the district court imposed a sentence of 316 months' imprisonment for first-degree controlled-substance crime—a double upward durational departure from the presumptive sentence of 158 months' imprisonment.[1] McDonald does not challenge the factual support for the jury's finding that he had at least five prior felony convictions, and we already have rejected McDonald's challenge to the factual support for the jury's finding that his present crimes were committed as part of a pattern of criminal conduct. McDonald argues that the court abused its discretion by imposing an aggravated durational departure sentence, claiming that although the court's sentencing departure was "based ostensibly" on McDonald's career-offender status, the court actually departed based on its belief that McDonald represents a danger to public safety. And McDonald argues that the court's belief that he represents a danger to public safety was "based on facts explicitly rejected by the jury" when it acquitted McDonald of the assault charges.

The record belies McDonald's claim. At the sentencing hearing, the district court stated:

> [T]he jury found that Mr. McDonald is a career criminal and can be treated as such and it's been clear to me throughout the whole situation in my previous contacts with Mr. McDonald and in looking at the three pages of—a criminal convictions

---

[1] McDonald's sentence does not exceed the statutory maximum sentence. *See* Minn. Stat. § 152.021, subd. 3(b) (2012) (providing for statutory maximum sentence of 480 months' imprisonment for first-degree controlled-substance crime as subsequent controlled-substance conviction).

> that—that are contained in the Pre-Sentence Investigation that Mr. McDonald is somebody—um, to whom probation or rehabilitation is ineffective. He has a general—I believe he has a general disregard for authority and is certainly not amenable to any sort of supervision. I also agree with the Prosecutor when they talk about the public safety issues. Not only the public safety of selling drugs, but the fleeing of the police officer and the gun fire that was—ah, resulted there and the—and the loaded weapon found in his car.
>
> I believe that—the double departure as recommended by the Prosecutor is appropriate and justified by these circumstances and by this case and the guilty—the guilty verdicts that were rendered by the jury after hearing all the facts of this case and so, therefore I am going to go along with that.

The court's comments, together with its departure report, establish that it based its aggravated durational departure on McDonald's career-offender status.[2] As a result, we conclude that the court did not abuse its discretion by departing.

***Pro se arguments***

*Speedy trial*

"Criminal defendants have the right to a speedy trial under the constitutions of both the United States and Minnesota." *State v. Taylor*, 869 N.W.2d 1, 19 (Minn. 2015) (citing U.S. Const. amend. VI; Minn. Const. art. I, § 6). "Claimed Sixth Amendment violations are subject to de novo review." *Id.* In considering a speedy-trial challenge, "[appellate courts] must consider: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his or her right to a speedy trial; and (4) whether the delay prejudiced

---

[2] The departure report states that the court imposed an aggravated departure sentence based on a "[j]ury determination of aggravating factors," specifically, that McDonald was a "Career Offender under Minn. Stat. § 609.1095, s. 4."

the defendant." *Id.* (quotation omitted). "None of these factors is either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* (quotation omitted).

As to the first factor, "[t]he delay in speedy-trial cases is calculated from the point at which the sixth amendment right attaches: when a formal indictment or information is issued against a person or when a person is arrested and held to answer a criminal charge." *State v. Jones*, 392 N.W.2d 224, 235 (Minn. 1986). "A delay that exceeds 60 days from the date of [a speedy-trial] demand [made after entry of a plea other than guilty] raises a presumption that a violation has occurred, and [appellate courts] must apply the remaining factors of the test." *Taylor*, 869 N.W.2d at 19; *see* Minn. R. Crim. P. 11.09(b) (providing that 60-day period "begins on the date of the plea other than guilty"). Even so, "the length of the delay only serves as a starting point for a speedy trial analysis." *State v. Johnson*, 498 N.W.2d 10, 15 (Minn. 1993). Here, McDonald's trial commenced 124 days after the attachment of his speedy-trial right. This delay exceeded 60 days from the date of McDonald's effective speedy-trial demand.[3] Therefore, we must presume that a violation has occurred and apply the remaining factors of the test.

As to the second factor, "the key question is whether the government or the criminal defendant is more to blame for the delay." *Taylor*, 869 N.W.2d at 19 (quotation omitted).

---

[3] The record does not indicate the date on which McDonald entered not-guilty pleas. As a result, the date of McDonald's effective speedy-trial demand is unclear. Whether McDonald's effective speedy-trial demand was made on May 9, 2014, or June 6, 2014, McDonald's trial commenced more than 60 days later.

15

"Delays caused by defense motions generally weigh against the defendant." *State v. Hahn*, 799 N.W.2d 25, 32 (Minn. App. 2011), *review denied* (Minn. Aug. 24, 2011); *see also State v. DeRosier*, 695 N.W.2d 97, 109 (Minn. 2005) (stating that "[w]hen the overall delay in bringing a case to trial is the result of the defendant's actions, there is no speedy trial violation" and determining that "delay in bringing the matter to trial was occasioned by defense motions for a change of venue, continuances, and a Rule 20 evaluation"); *Johnson*, 498 N.W.2d at 16 (attributing bulk of trial delay to defendant whose "own motions were the primary reason for much of the delay"). Even as to delay that weighs against the state, "different weights should be assigned to different reasons." *Taylor*, 869 N.W.2d at 20 (quotation omitted). "For instance, a deliberate delay to hamper the defense weighs heavily against the prosecution, while neutral reasons such as negligence or overcrowded courts weigh less heavily." *Id.* (quotations omitted). The state's processing of physical evidence is "usually a valid reason for delay." *See State v. Traylor*, 641 N.W.2d 335, 343 (Minn. App. 2002) (approving delay to process DNA evidence), *rev'd in part on other grounds*, 656 N.W.2d 885 (Minn. 2003).

In this case, the delay was triggered by McDonald's June 12, 2014 motion; but the motion was partially prompted by, and partially delayed by, the pace of discovery disclosures by the state, as influenced by the state's processing of physical evidence. Yet some of the issues that McDonald raised in his motion were unrelated to the state's discovery disclosures, and nothing in the record indicates that the state intentionally delayed its evidence-processing or its disclosures.

16

As to the third factor, a "defendant's assertion of the right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *State v. Friberg*, 435 N.W.2d 509, 515 (Minn. 1989) (quotation omitted). "The circumstances surrounding the frequency and intensity of a defendant's assertion of a speedy trial demand—including the import of defense decisions to seek delays—can be weighed in the third [factor] . . . ." *State v. Windish*, 590 N.W.2d 311, 318 (Minn. 1999). Here, the state properly concedes that McDonald asserted his right to a speedy trial. And the record shows that McDonald made prompt, repeated, and forceful demands for a speedy trial. Yet McDonald also filed a motion that raised some issues of dubious import at the pretrial stage.

As to the fourth factor, "[the supreme court] ha[s] identified three interests to consider in determining whether a defendant suffered prejudice: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) preventing the possibility that the defense will be impaired." *Taylor*, 869 N.W.2d at 20 (quotation omitted). "A defendant does not have to affirmatively prove prejudice; rather, prejudice may be suggested by likely harm to a defendant's case." *Windish*, 590 N.W.2d at 318. Delay-occasioned harm to a defendant's case may include damage to a witness's ability to recall "essential facts," the unavailability of a witness, or impairment of representation. *Jones*, 392 N.W.2d at 235–36. Here, McDonald generally alleges oppressive pretrial incarceration and impairment to the defense, but he points to no facts in support of his vague allegations. Our independent review of the record has revealed no

17

such facts. And the 124-day delay in this case, which McDonald acknowledges was "relatively short," does not raise the specter of likely harm to McDonald's defense.

We conclude that the four factors as applied to this case show that McDonald was not deprived of his right to a speedy trial.

*Judicial bias*

"Due process requires that a judge have no actual bias against a defendant or an interest in a case's outcome." *State v. Sailee*, 792 N.W.2d 90, 95 (Minn. App. 2010) (citing *Bracy v. Gramley*, 520 U.S. 899, 904–05, 117 S. Ct. 1793, 1797 (1997)), *review denied* (Minn. Mar. 15, 2011). But "adverse rulings by themselves do not demonstrate judicial bias. Rather, the bias must be proved in light of the record as a whole." *Hannon v. State*, 752 N.W.2d 518, 522 (Minn. 2008) (citation omitted). "In reviewing claims of judicial bias, [appellate courts] have considered whether the trial judge considered arguments and motions made by both sides, ruled in favor of a complaining defendant on any issue, and took actions to minimize prejudice to the defendant." *Id.* "Also, [appellate courts] presume that a judge has discharged her duties properly." *Id.*

In this case, McDonald generally asserts that the district court was biased against him. But the only instances of "bias" identified by McDonald are the court's adverse rulings on certain pretrial issues on which McDonald wishes he had prevailed. Moreover, the court ruled in favor of McDonald on other pretrial issues and regarding trial objections. Because McDonald's assertions of bias are not supported by the record as a whole, we conclude that McDonald has failed to prove judicial basis.

*Sentencing manipulation*

18

McDonald implicitly challenges the district court's denial of his postverdict motion regarding sentencing manipulation, arguing that police officers' arrangement of five separate controlled purchases from McDonald "w[as] purely, solely and wholly intended to increase [McDonald's] sentencing exposure." "Sentencing manipulation occurs when the government unfairly exaggerates the defendant's sentencing range by engaging in a longer-than-needed investigation and, thus, increasing the drug quantities for which the defendant is responsible." *United States v. Moran*, 612 F.3d 684, 691 (8th Cir. 2010) (quotation omitted). Under the doctrine of sentencing manipulation, if a defendant demonstrates by a preponderance of the evidence that officers engaged in drug transactions solely to enhance a defendant's potential sentence, the defendant may be entitled to a downward durational departure to the sentencing-guidelines range applicable in the absence of the manipulation. *Id.*

The Minnesota Supreme Court has declined to adopt the doctrine of sentencing manipulation "in the absence of egregious police conduct which goes beyond legitimate investigative purposes." *State v. Soto*, 562 N.W.2d 299, 305 (Minn. 1997). And even in jurisdictions that fully recognize the doctrine of sentencing manipulation, "[courts] will not find sentencing manipulation when there is evidence of legitimate law enforcement goals and purposes," *United States v. Sacus*, 784 F.3d 1214, 1220 (8th Cir. 2015), *cert. denied*, 136 S. Ct. 348 (2015), such as "to determine what quantity of drugs a defendant will deal," "to establish th[e defendant]'s guilt beyond a reasonable doubt," "to probe the depth and extent of the criminal enterprise, to determine whether co-conspirators exist, and to trace the drug deeper into the distribution hierarchy," *Moran*, 612 F.3d at 692 (quotations

19

omitted). Here, the state presented evidence of legitimate law enforcement goals and purposes for the multiple controlled purchases. McDonald does not refute the state's evidence; instead, he essentially complains that officers did not employ every available investigatory tactic against him to achieve their legitimate goals and purposes. As a result, even if sentencing manipulation were recognized by the supreme court, McDonald has failed to prove such manipulation. We conclude that the district court did not err by denying McDonald's sentencing-manipulation motion.

**Affirmed.**